IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| WADITH STOCKINGER NADER and STACEY NICHOLE NADER, <br><br> Plaintiffs <br><br> vs. <br><br> THE CITY OF PAPILLION; SARPY COUNTY; BRYAN SVAJGL; BENJAMIN IVERSEN; SCOTT A. LYONS; L. KENNETH POLIKOV; and JENNIFER MIRALLES, <br><br> Defendants. | **COMPLAINT** <br> **DEMAND FOR JURY TRIAL AND** <br> **DESIGNATION OF PLACE OF TRIAL** |

Plaintiffs, Wadith Stockinger Nader ("Mr. Nader") and Stacey Nichole Nader ("Mrs. Nader") by their undersigned attorney, bring this suit pursuant to 42 U.S.C. 1983 against Defendants, The City of Papillion, Nebraska, Sarpy County, Nebraska, Bryan Svajgl, Benjamin Iversen, Scott A. Lyons; L. Kenneth Polikov, and Jennifer Miralles, (collectively referred to as the "Defendants").

**PRELIMINARY STATEMENT**

1. This is a civil rights action arising out of the violation of Wadith Nader's constitution rights in a state criminal court proceeding. On March 17, 2015, Mr. Nader's constitution rights were violated when he was unconstitutionally seized at his home without probable cause and held in a state criminal institution for twenty-eight days. Plaintiff brings this cause of action for violation of his civil rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. At issue are the

policies, procedures, practices and customs of the Papillion Police Department, and the Sarpy County Attorney's Office.

## JURISDICTION AND VENUE

2.     Plaintiff brings this action pursuant to 42 U.S.C. 1983.  Plaintiff brings this lawsuit to enforce Plaintiff's guaranteed rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

3.     This Court has jurisdiction under 28 U.S.C. § 1331.  This Court also has jurisdiction under 28 U.S.C. § 1332 because there exists a diversity of citizenship between the Plaintiffs and Defendants and the amount in controversy exceeds $75,000.

4.     Venue is proper pursuant to 28 U.S.C. § 1391 as all relevant events in this case took place within this Judicial District.

5.     Venue is proper because all of the events occurred within this jurisdiction.

## PARTIES

6.     Mr. Nader is a citizen of the State of New Jersey.  At all relevant times to this action Mr. Nader was a resident of the City of Papillion, Nebraska.

7.     Mrs. Nader is a citizen of the State of New Jersey.  At all relevant times Mrs. Nader was a resident of the City of Papillion, Nebraska.

8.     Defendant Bryan Svajgl was at all relevant times employed by the Papillion Police Department.

9.     Defendant Benjamin Iversen was at all relevant times employed by the Papillion Police Department.

10.    Defendant Scott A. Lyons was at all relevant times employed by the Papillion Police Department.

11. Defendant County Attorney L. Kenneth Polikov, was at all relevant times an employee of the Sarpy County Attorney's Office.

12. Defendant County Attorney Jennifer Miralles was at all relevant times an employee of the Sarpy County Attorney's Office.

13. All of the individual Defendants are sued in their individual capacities. Each of the individual Defendants acted within the scope of his/her duties at all times relevant to this action. Each of the individual Defendants acted under the color of state law at all times relevant to this action.

14 Defendant City of Papillion is a political subdivision of the State of Nebraska. The City of Papillion was the employer of Bryan Svajgl, Benjamin Iversen, and Scott Lyons at all times relevant to this action.

15. Defendant Sarpy County is a political subdivision of the State of Nebraska. Sarpy County was the employer of L. Kenneth Polikov and Jennifer Miralles at all times relevant to this action.

## FACTUAL BACKGROUND

16. Mr. Nader is a United States Air Force veteran who served for 15 1/2 years, before being honorably discharged.

17. Mr. Nader's duties in the United States Air Force primarily involved intelligence and counter-terrorism operations.

18. Mrs. Nader is an active duty United States Air Force officer, who in March 2015 was a Lt. Colonel at Offutt Air Force Base.

19. On March 20, 2015, Mrs. Nader was selected for Permanent Change of Duty Station, which would have required her and her family to move to Spain.

20. Mrs. Nader's Permanent Change of Duty Station was canceled as a result of the incidents described below.

21. Since being honorably discharged from the United States Air Force, Mr. Nader has been in the process of obtaining his doctorate in strategic security.

## ALLEGATIONS OF FACT

22. On December 12, 2014 and December 20, 2014, the City of Papillion Police Department received a tip from the National Center for Missing and Exploited Children that child pornography had been transmitted over a Microsoft online account owned by Wadith Nader.

23. Following the tip from the National Center for Missing and Exploited Children, the Papillion Police Department began an investigation into Wadith Nader.

24. As a part of this investigation, the Papillion Police Department subpoenaed the Naders' internet records.

25. As a part of this investigation, the Papillion Police Department requested and received a search warrant to search the Naders' home, on the basis of the tip from the National Center for Missing and Exploited Children.

26. On March 17, 2015, the Papillion Police Department executed the search warrant.

27. At the time the arrest warrant was executed, Wadith Nader was at home, police knocked on his door, and upon opening the door, Mr. Nader was immediately pinned against the wall and began to be questioned.

28. During the course of the investigation, chemicals were found in the Naders' home. Mr. Nader explained that the chemicals were used for jewelry reclamation.

29. During the course of the search of the Naders' home, books on terrorism, which were related to Mr. Nader's doctoral research, were found in the Naders' house.

30. Because of the chemicals, and the books on terrorism, the detectives executing the search warrant called the bomb squad, in spite of Mr. Nader's explanation for the materials, and in spite of the fact that the Papillion Police knew, or should have known of Mr. Nader's research and work for the U.S. Government on terrorism and terrorism-related matters.

31. While some detectives and police department technicians conducted a search of the Nader home, Mr. Nader was questioned for several hours by Detective Svajgl.

32. Detective Svajgl asked Mr. Nader numerous times where the child pornography was hidden. At no time did Mr. Nader admit to owning, or possessing any child pornography. During the entire course of the questioning, Mr. Nader continued to deny ownership of any child pornography.

33. During the course of the search of the Nader home, one photo was allegedly discovered on a computer by Detective Iversen which was identified as possible child pornography. Subsequent forensic searches failed to locate this alleged

photo, including searches by the Nebraska State Patrol, and the Douglas County Sherriff's Department.

34. During the course of the search of the Nader home, none of the images identified by the National Center for Missing and Exploited Children as child pornography were located on any computer or other electronic device in the Nader home.

35. When no evidence was found of child pornography on the Nader computers or electronic devices, Detective Svajgl called Sarpy County Attorney Miralles to notify her of the findings.

36. Upon being told that no child pornography had been found in the house, Sarpy County Attorney Miralles nonetheless directed Detectives Svajgl and Iversen to arrest Mr. Nader based solely upon the information and the tip from the National Center for Missing and Exploited Children.

37. Mr. Nader was arrested and charged on six counts of Possession of Child Pornography, which was later amended to seven counts.

38. After Mr. Nader was arrested, Mrs. Nader, who was out of the State of Nebraska on official business in her capacity as an officer in the United States Air Force, was notified.

39. The Naders' children, Raiyah and Sterling, were temporarily placed in custody of their maternal grandmother.

40. Mr. Nader was held in jail from March 17, 2015 to April 13, 2015.

41. As a result of Mr. Nader's arrest, the Department of Health and Human Services was required by law to investigate any potential child abuse or neglect of Mr.

Nader. The Department of Health and Human Services concluded on March 31, 2015, that the sexual abuse allegations involving Mr. Nader and his children were unfounded.

42. On April 13, 2015, when Mr. Nader was released from jail after posting his bond, he moved in with his mother-in-law.

43. Even after being released on bond, Mr. Nader was denied any contact with his children for seventy-nine days.

44. On May 6, 2015, the Douglas County Sheriff's Department ceased forensic investigation of the Naders' computer equipment and returned the equipment to Detective Svajgl; a finalized report from the Douglas County Sheriff's Department was completed on May 20, 2015, and delivered to the attorney for Mr. Nader the following day. After receiving the report from the Douglas County Sheriff's Department, the Sarpy County Attorney and/or the Papillion Police Department had the Nebraska State Crime Lab review the data and equipment.

45. Ultimately, the charges against Mr. Nader were dismissed on October 14, 2015.

## **INJURIES**

46. The filing of the felony charges against Mr. Nader, as well as the investigation and prosecution of said charges caused Mr. Nader to suffer damage to his reputation and loss of earning capacity, as well as mental distress and anguish. These injuries were amplified by the fact that because the bomb squad was called, media was already attuned to the case before an arrest was made and further amplified by the fact that Papillion Police Lieutenant Orin Orchard gave a statement to the media following Mr. Nader's arrest.

47. The filing of felony charges against Mr. Nader show on Google and news searches after the dismissal of the case, and internet advertisements on those news reports link to Mr. Nader's research, further damaging his reputation in the academic field.

48. Because of the filing of felony charges against Mr. Nader, Mr. Nader's ability to advance his career has been damaged and the value of his doctoral degree has been damaged.

49. The filing of felony charges against Mr. Nader, the investigation and prosecution of those charges has also caused damage to the reputation and career prospects of Mrs. Nader. As a direct and proximate result of Mr. Nader's unlawful seizure, Mrs. Nader was unable to take an assignment which would have taken her out of the country. Because Mrs. Nader was unable to take this assignment, she is no longer competitive for promotions, and has been passed over for promotions. It is highly likely that Mrs. Nader will continue to be passed over for promotions going forward.

50. The removal of Raiyah and Sterling from the Naders' custody as a direct result of Defendants' missteps caused Mr. Nader to suffer a loss of companionship during the time he was involuntarily held, and the time he was held away from his children. This separation caused damage to the parent/child relationships.

51. Because Mr. Nader was in jail, and, later because Mr. Nader was unable to have contact with his children, Mrs. Nader's Permanent Change of Duty Station assignment was canceled.

52. As a result of Mrs. Nader's Permanent Change of Duty Station Assignment being canceled, Mrs. Nader's future ability to advance in the United States Air Force has been dramatically harmed. This harm damages both Mrs. Nader's reputation and Mrs. Nader's future earning capacity. Likewise, this injures Mr. Nader's earning capacity as well.

53. The Naders both suffered psychological harm, mental anguish, and embarrassment as a result of the Defendants' actions.

## CAUSES OF ACTION

### COUNT I: UNCONSTITUTIONAL SEIZURE AND CONFINEMENT OF WADITH NADER

54. The Naders repeat and re-allege paragraphs 1 through 53 as if set forth fully herein.

55. The Defendants, acting individually and collectively under the color of state law, seized and detained Wadith Nader and placed him in police custody and transported him to a state facility against his will. Defendants made this arrest, without sufficient probable cause to make said arrest.

56. No reasonable police officer in a similar situation would have made the same decisions made by Officers Svajgl and Iversen in this case.

57. No reasonable County Attorney would have made the same decision made by County Attorney Miralles to order an arrest of Mr. Nader given these facts.

58. As a direct and proximate result of the unconstitutional seizure and confinement of Mr. Nader, the Naders suffered the injuries identified above

.

## COUNT II: MALICIOUS PROSECUTION

59. The Naders repeat and re-allege paragraphs 1 through 58 as if set forth fully herein.

60. The Defendants, acting individually and collectively, under the color of state law, intentionally instituted, and pursued a criminal action against Mr. Nader without probable cause.

61. The intentional and unlawful action brought against Mr. Nader was ultimately dismissed in favor of Mr. Nader.

62. No reasonable police officer in a similar situation would have made the same decisions made by Officers Svajgl and Iversen in this case.

63. No reasonable County Attorney would have made the same decision made by County Attorney Miralles to order an arrest of Mr. Nader given these facts.

64. As a direct and proximate result of the malicious prosecution, the Naders suffered the injuries identified above.

## COUNT III: CONSPIRACY TO VIOLATE CIVIL RIGHTS

65. The Naders repeat and re-allege paragraphs 1 through 64 as if set forth fully herein.

66. This Count is brought against all Defendants for conspiracy to violate Mr. Nader's rights under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution as set forth above.

67. Defendants Svajgl, Iversen, Lyons and Miralles entered into an agreement and acted in concert and based on a plan commonly understood among them to deprive Mr. Nader of his constitutional rights.

68. In furtherance of the conspiracy each of the co-conspirators committed overt acts and was otherwise a willful participant in the joint activity; these acts included participating in the search, the identification of an image which subsequently could never be identified, the questioning of Mr. Nader, and ultimately the arrest of Mr. Nader.

69. Each of the individual Defendants acted knowingly, intentionally, and with malice. Each individual Defendant was deliberately indifferent to Mr. Nader's constitutional rights. As a direct and proximate result of the illicit agreement as described herein, Mr. and Ms. Nader suffered the injuries fully alleged above.

70. Defendants participated in the conspiracy under the color of law.

71. As a direct and proximate result of the conspiracy to violate Mr. Nader's civil rights, the Naders suffered the injuries identified above.

### COUNT IV: THE POLICIES, PRACTICES AND CUSTOMS OF THE CITY OF PAPILLION, AND THE SARPY COUNTY ATTORNEY'S OFFICE CAUSED THE VIOLATION OF PLAINTIFFS' CONSTITUTION RIGHTS.

72. The Naders repeat and re-allege paragraphs 1 through 71 as if set forth fully herein.

73. The Papillion Police Department and Sarpy County Attorney's office do not provide adequate training to their police officers and/or County Attorneys in the proper manner of conducting criminal investigations.

74. In particular, the City of Papillion does not provide adequate training on the proper procedure and adequate grounds for making an arrest such as was made in Mr. Nader's case.

75. The Sarpy County Attorney's Office does not provide adequate training to its attorneys or other employees in the proper procedure and adequate grounds for ordering an officer to make an arrest.

76. The need for adequate training in these areas is set forth in the preceding paragraphs, in failing to adopt adequate training policies in these areas both the Sarpy County Attorney's Office and the City of Papillion were deliberately indifferent to the rights of Mr. and Mrs. Nader as well as other persons who might be suspected of committing a crime.

77. As a direct and proximate result of the policies, practices and customs of the City of Papillion and the Sarpy County Attorney's office causing the violation of Mr. Nader's constitutional rights, the Naders have suffered the injuries set forth above.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on the above-captioned case.

DATED this 16th day of March, 2017.

        WADITH STOCKINGER NADER AND
        STACEY NICHOLE NADER, Plaintiffs

By: _____
      Christopher J. Tjaden, #18413
      Zachary Lutz-Priefert, #25902
      GROSS & WELCH, P.C., L.L.O.
      1500 Omaha Tower
      2120 South 72nd Street
      Omaha, NE 68124
      (402) 392-1500
      *Attorneys for Plaintiffs*

12913-1/#6BR5650