IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| WADITH STOCKINGER NADER and STACEY NICHOLE NADER, | ) ) ) | Case No. 8:17-cv-83 |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | RULE 26(f) REPORT |
| THE CITY OF PAPILLION; SARPY COUNTY; BRYAN SVAJGL; BENJAMIN IVERSEN; SCOTT A. LYONS; L. KENNETH POLIKOV; and JENNIFER MIRALLES, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

The following attorneys conferred to prepare the Report of Parties' Planning Conference for the above-captioned case:

**Christopher J. Tjaden & Zachary W. Lutz-Priefert, counsel for Plaintiffs.**

**Vincent Valentino, counsel for Defendants Sarpy County, Nebraska, L. Kenneth Polikov, and Jennifer Miralles.**

**Ryan M. Kunhart & Jeffrey J. Blumel, counsel for Defendants City of Papillion, Bryan Svajgl, Scott Lyons, and Benjamin Iversen**

The parties discussed the case and jointly make the following report:[1]

I.   **INITIAL MATTERS:**

   A.   <u>Jurisdiction and Venue</u>:  The defendants

---

[1] Counsel are advised to use caution in filing this report as well as other documents so there is no disclosure of information required by the E-Government Act of 2002 to be kept non-public, such as addresses, phone numbers, social security numbers, etc. If such identifiers are required to be disclosed to opposing parties, you may wish to file redacted versions for the public court file and serve opposing parties with unredacted versions. See NECivR 5.3, available on the court's Website at www.ned.uscourts.gov.

      \_\_\_\_\_ does

      \_x\_ do not

contest jurisdiction and/or venue. If contested, such position is because:

1) Jurisdiction:_____

2) Venue:_____

B. <u>Immunity</u>: The defendants

   \_\_\_\_\_ has raised

   \_x\_ will raise

   \_\_\_\_\_ will not raise

immunity defenses based on <u>sovereign immunity and absolute prosecutorial immunity for Polikov and Miralles, and Sarpy County, qualified immunity for all individually named defendants</u>.

C. If either jurisdiction or venue is being challenged, or if a defense of immunity will be raised, state whether counsel wish to delay proceeding with the initial phases of discovery until those issues have been decided, and if so, state (i) the earliest a motion to dismiss or transfer will be filed, and (ii) what, if any, initial discovery, limited to that issue, will be necessary to resolve the motion.

<u>Defendants recognize that limited discovery may be necessary to resolve asserted immunity defenses, and therefore the parties have agreed to the following:</u>

<u>1) that the initial progression order contain a provision ordering that the initial phase of discovery be limited in scope to what is necessary to resolve asserted immunity defenses. The parties agree to leave open the issue of what specific discovery is necessary to resolve the immunity motions, with Defendants reserving the right to file a motion for protective order if the parties are unable to resolve any disputes that arise about the initial limited scope of discovery. The parties agree that any witness who legitimately needs to be deposed in preparation for asserting or defending against immunities shall be deposed as to all issues, to avoid the potential need to have to depose any witness twice.</u>

<u>2) that the initial progression order establish a deadline for filing of summary judgment motions based on immunity assertions. Defendants anticipate that</u>

(Rev. 6/9/11)

motions for summary judgment to resolve immunity defenses can be filed by no later than 6 months from the date of the initial progression order.

3)   that the initial progression provide that the parties should contact the court within 15 days after resolution of immunity based summary judgment motions to schedule all further progression deadlines.

D.   Rule 11 Certification: As a result of further investigation as required by Fed. R. Civ. P. 11, after filing the initial pleadings in this case, the parties agree that the following claims and defenses raised in the pleadings do not apply to the facts of this case, and hereby agree the court may dismiss or strike these claims and defenses at this time (an order adopting this agreement will be entered).

None.

## II.   CLAIMS AND DEFENSES:

A.   <u>Plaintiffs' Claims, Elements</u>: The elements of the plaintiffs' claims and the elements disputed by defendants are as follows. For each claim, list and number each substantive element of proof. (DO NOT repeat boilerplate allegations from pleadings):

1)   CLAIM ONE: Unconstitutional Seizure of Wadith Nader
Elements:

1. The conduct was committed by the Defendants acting under color of state law;

2. The conduct in question deprived Plaintiff of rights, privileges, or immunity secured by the Constitution or laws of the United States, specifically Plaintiff's Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights; and

3. The Plaintiffs were damaged thereby.

Factual Application:

Over the span of several months, Wadith Nader was investigated by the Papillion Police Department for allegations surrounding the possession of child pornography. On March 17, 2015, a search warrant was executed upon Mr. Nader's house. The search warrant found no evidence of any crimes being committed by Mr. Nader. Officer Svajgl informed the County Attorney that there was no evidence of any crimes being

(Rev. 6/9/11)

-3-

committed by Nader, and Nader was nonetheless arrested with an alleged basis of probable cause being the tip that started the investigation regarding possession of child pornography, of which no images related to the search were found.

Of these elements, defendants dispute the following: ALL

2) CLAIM TWO: Malicious Prosecution.

Elements:

1. The Defendants intentionally and maliciously brought a cause of action against the Plaintiff which they knew no probable cause existed for;

2. The Defendants acted under color of state law in doing so; and

3. Plaintiffs were damaged as a result.

Factual Application:

After the search warrant was executed on Mr. Nader's home, and after it was revealed that Mr. Nader had no child pornography in his home, the County Attorney nonetheless ordered the arrest of Mr. Nader. The County Attorney continued to prosecute Mr. Nader for several months after this before charges were dropped. The County Attorney took these actions while knowing that the charges against Mr. Nader were entirely unsubstantiated and lacked probable cause.

Of these elements, defendants dispute the following: ALL

3) CLAIM THREE: Conspiracy to violate civil rights.

Elements:

1. The Defendants, acting together, and acting under the color of law, reached an agreement or understanding, and engaged in a course of conduct to further that agreement or understanding or otherwise conspired and colluded amongst and between each other to deprive the Plaintiff of his constitutional rights guaranteed by the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments; the Defendants together engaged in these actions with actual knowledge or deliberate indifference to the truth and to Plaintiff's constitutional rights; and Plaintiff was damaged by the conspiracy.

(Rev. 6/9/11)

Factual Application:

The County Attorney and various individuals in the Papillion Police Department, including the Defendants named herein, worked exclusively upon seeking to convict Mr. Nader of crimes, and at the time it was revealed that no crimes were committed, the individual Defendants named herein nonetheless conspired to and took actions to effectuate the conspiracy leading to the arrest of Mr. Nader.

Of these elements, defendants dispute the following: ALL

4) CLAIM FOUR: The Policies and Practice of the Defendants caused a violation of the Plaintiff's constitutional rights.

Elements:

1. The Defendant County and the Defendant City implemented policies or customs of failing to train and supervise employees in the techniques of investigating serious crimes, in using proper search techniques, and failed to discipline officers who violated the Constitution, law, or otherwise violate the rights of criminal suspects during the course of a criminal investigation, including proper instruction on the meaning of probable cause and how probable cause is met.

2. This conduct complained of was committed by the Defendant County and the Defendant City acting under the color of state law;

3. The conduct in question deprived Plaintiff of rights, privileges or immunity secured by the Constitution or laws of the United States, specifically Plaintiff's Fourth, Fifth, Eighth and Fourteenth Amendment rights and for the Plaintiffs damaged hereby.

Of these elements, defendant disputes the following: ALL

B. Defenses. The elements of the affirmative defenses raised by the pleadings are as follows. List each affirmative defense raised or expected to be raised by the defendant(s), and the substantive elements of proof. (DO NOT repeat boilerplate allegations from pleadings or deny matters on which the plaintiff has the burden of proof):

(Rev. 6/9/11)

1) DEFENSE ONE: Absolute Prosecutorial Immunity for Polikov and Miralles in their individual capacities.
(Defendants note that this is not technically an affirmative defense, but rather, an immunity from suit. To the extent this report nevertheless contemplates a description of the elements and factual application, they are provided below).

Elements:

1) The named Defendant is an attorney employed as a prosecutor or performing the type of functions that a prosecutor would perform;
2) The alleged wrongful acts were part of the traditional functions of an advocate.

Factual Application:

L. Kenneth Polikov and Jennifer Miralles were employed as prosecuting attorneys in the criminal department of the Sarpy County Attorney's Office at the time of the events in question. Polikov was the elected County Attorney, while Miralles was a Deputy County Attorney at all pertinent times. All actions or inactions by them identified in Plaintiff's complaint, which primarily relate to their role in advising police in legal matters and decisions made by them in the prosecution of a criminal case against Plaintiff Wadith Nader, or interrelated matters, were within the scope of their lawful duties as prosecutors and advocates.

Of these elements, the Plaintiffs dispute the following: _All___.

2) DEFENSE TWO: Qualified Immunity for Polikov and Miralles in their individual capacities.
(Defendants note that this is not technically an affirmative defense, but rather, an immunity from suit. To the extent this report nevertheless contemplates a description of the elements and factual application, they are provided below).

Elements:

1) The alleged facts do not show that the conduct of the individually named governmental official violated any constitutional right, OR
2) Any constitutional right violated was not clearly established under the particularized circumstances of the case.

(Rev. 6/9/11)

Factual Application:

To the extent that any of their alleged actions or inactions are outside the scope of what would be entitled to absolute prosecutorial immunity, Polikov and Miralles are entitled to qualified immunity, because all of their actions were aimed at prosecuting Plaintiff Wadith Nader for criminal offenses that he was reasonably believed to have committed based on the information personally available to them, and at all times they acted in an objectively reasonable manner and were not placed on notice by any existing law that their alleged actions were in violation of the constitutional rights of the Plaintiff(s).

Of these elements, the Plaintiffs dispute the following: _All___.

3) DEFENSE THREE: Qualified Immunity for Iversen and Svajgl in their individual capacities.
(Defendants note that this is not technically an affirmative defense, but rather, an immunity from suit. To the extent this report nevertheless contemplates a description of the elements and factual application, they are provided below).

Elements:

1) The alleged facts do not show that the conduct of the individually named governmental official violated any constitutional right, OR
2) Any constitutional right violated was not clearly established under the particularized circumstances of the case.

Factual Application:

Iversen and Svajgl are entitled to qualified immunity, because all of their actions were aimed at arresting Plaintiff Wadith Nader for criminal offenses that they reasonably believed to have committed based on the information personally available to them, and at all times they acted in an objectively reasonable manner and were not placed on notice by any existing law that their alleged actions were in violation of the constitutional rights of the Plaintiff(s).

Of these elements, the Plaintiffs dispute the following: _All____.

(Rev. 6/9/11)

-7-

    4)     DEFENSE FOUR: Sovereign Immunity under the Nebraska Political Subdivisions Tort Claims Act (as to malicious prosecution claim for all Defendants).

    Elements:

        1)    Plaintiffs' claim(s) are based upon alleged acts or omissions of employee(s) of a political subdivision who were exercising due care in executing provisions of law, whether or not such laws are invalid, OR
        2)    Plaintiffs' claim(s) are based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of a political subdivision or its employee(s), whether or not such discretion is abused, OR
        3)    Plaintiffs' claim(s) arise out of an alleged abuse of process, malicious prosecution, misrepresentation, deceit, or interference with contract rights.

    Factual Application as to all Defendants:

        1)    Polikov and Miralles acted in due care and in execution of law in their contacts with Plaintiff Wadith Nader, law enforcement, and the prosecution of the criminal matter against Plaintiff;
        2)    Iversen and Svajgl acted in due care and in execution of the law in their contacts with Plaintiffs, the Sarpy County Attorney's Office, and their investigation following the arrest of Plaintiff Wadith Nader;
        3)    The development of practices and procedures, policies and customs concerning the County Attorney's Office are discretionary functions based on policy concerns at the operational level of the County;
        4)    The development of practices and procedures, policies and customs concerning the City of Papillion are discretionary functions based on policy concerns at the operational level of the City of Papillion;
        5)    Plaintiffs allege that a malicious criminal prosecution of Wadith Nader occurred and that prosecutors acted improperly, and Plaintiff Stacey Nader alleges a lost job opportunity.

    Of these elements, the Plaintiffs dispute the following: __All_____.

(Rev. 6/9/11)

5) DEFENSE FIVE: Failure to Mitigate, Doctrine of Avoidable Consequences

Elements:

1) The Plaintiffs had a reasonable opportunity to avoid some or all of the damages alleged, but
2) Plaintiffs failed to take advantage of such opportunity.

Factual Application:

Plaintiff Wadith Nader, by the manner in which he voluntarily engaged in internet activity, placed himself and Plaintiff Stacey Nader in a position to be subject to a reasonable warrant for arrest and incarceration on suspicion of violations of criminal law at Neb. Rev. Stat. §28-813.01, *et. seq.*, and he had pre-arrest opportunities through his internet conduct to have avoided that result, but did not avail himself of those. Plaintiff Stacey Nader had opportunities to intervene to prevent her husband's aforementioned conduct, but did not intervene. Plaintiff Stacey Nader had alternative choices available to her that would have avoided her alleged lost job opportunity, or she deliberately chose to incur this purported loss for personal reasons unrelated to any alleged wrongful conduct of the Defendants. Plaintiffs failed to take advantage of these opportunities to avoid their alleged damages.

Of these elements, the Plaintiffs dispute the following: __All_____.

6) DEFENSE SIX: Failure to State a Claim upon which relief can be granted (as relates to the County).

Elements:

1) Neb. Rev. Stat. §23-101 provides the proper legal name of the County in which it may sue and be sued;
2) Violation of above statute.

Factual Application:

Plaintiff has sued "Sarpy County" when its proper legal name under Nebraska law is "the County of Sarpy, Nebraska."

Of these elements, the Plaintiffs dispute the following: __All_____.

(Rev. 6/9/11)

-9-

III. **SETTLEMENT:**

Counsel state:

\_\_\_\_ There have been no efforts taken yet to resolve this dispute.

\_\_x\_\_ This dispute has been the subject of efforts to resolve it

    \_\_x\_\_ prior to filing in court.

    \_\_\_\_\_ after court filing, but before the filing of this report.

    Those efforts consisted of
The Plaintiffs' filed notices with demands pursuant to the Nebraska Political Subdivision Tort Claims Act on certain Defendants, which were subsequently withdrawn when no answer was received.
_____.

\_\_x\_\_ Counsel have discussed the court's Mediation Plan and its possible application in this case with clients and opposing counsel.

    \_\_x\_\_ Mediation may be appropriate in this case depending on the outcome of anticipated immunity-based pretrial dispositive motions. In the event that the case proceeds beyond those motions, Defendants will reconsider mediation..

    \_\_ Mediation will not be appropriate because

\_\_\_\_\_ Counsel believe that with further efforts in the future, the case can be settled. The parties will be prepared to discuss settlement, or again discuss settlement, by _____.
Explain. _____

IV. **CASE PROGRESSION:**

    A. Do any of the parties believe an initial planning conference would be beneficial and/or should be held before a final scheduling order is entered? <u>No</u>
Explain._____

    B. Mandatory disclosures required by Rule 26(a)(1), including a statement of how each matter disclosed relates to the elements of the disclosing party's claims or defenses

(Rev. 6/9/11)

   \_\_\_\_\_ have been completed.

   \_\_x\_\_ will be completed by <u>within 30 days of filing of initial progression order</u>.

C. Motions to amend the pleadings or to add parties.

  1) The plaintiffs

   \_\_x\_\_\_ do

   \_\_\_\_\_ do not

   anticipate the need to amend pleadings or add parties. The parties have agreed that the Plaintiffs shall have seven days from the entry of the scheduling order to amend their pleading to substitute the correct legal name of the County of Sarpy, Nebraska and to add a prayer for relief, and that the Defendants shall have five days thereafter to file answers to the amended complaint.

  2) The defendants

   \_\_\_\_\_ do

   \_\_\_\_\_ do not

   \_\_x\_\_ do not

   anticipate need to amend pleadings or add parties <u>unless Plaintiffs amend or new information becomes available</u>. Any motions to amend pleadings shall be filed by <u>within 30 days of Plaintiffs' amendment or receipt of new information</u>.

  If more than ninety days are needed, state the reason(s) why such time is necessary._____

D. Experts.

  1) If expert witnesses are expected to testify <u>for purposes of immunity-based motions</u>, counsel agree to at least **identify** such experts, by name and address, (i.e., without the full reports required by Rule 26(a)(2)), by:

(Rev. 6/9/11)

-11-

>           For Plaintiffs, 90 days before Defendants' deadline for summary judgment motions based on immunity assertions.
>           For Defendants, 60 days before Defendants' deadline for summary judgment motions based on immunity assertions.
>
>           The parties request that new expert disclosure deadlines be set in a further progression order, if necessary, following resolution of such motions.

   2)   Experts and, unless otherwise agreed, expert **reports** for purposes of immunity-based motions shall be served by:

        > For Plaintiffs, 60 days before deadline for Defendants' summary judgment motions based on immunity assertions.
        >
        > For Defendants, 30 days before deadline for summary judgment motions based on immunity assertions.
        >
        > Any rebuttal expert of either party shall be identified within 21 days of the receipt of an expert's report.
        >
        > The parties request that new expert disclosure deadlines be set in a further progression order, if necessary, following resolution of such motions.

   3)   Motions to exclude expert testimony on *Daubert* and related grounds will be filed by 30 days before pretrial hearing.

E.   Discovery.

   1)   Written discovery under Rules 33 through 36 of the Federal Rules of Civil Procedure will be completed by:

        > As to the initial phase of discovery limited to what is necessary to resolve Defendants' immunity assertions:  3 months from entering of initial progression order.  Parties request that a further progression order be entered, if necessary following resolution of immunity based motion(s).

   2)   Depositions, whether or not they are intended to be used at trial, will be completed by:

        > As to the initial phase of discovery limited to what is necessary to resolve Defendants' immunity assertions:  4 months from entering of initial progression order.  Parties request that a further progression order be entered, if necessary following resolution of immunity based motion(s).

(Rev. 6/9/11)

    3)    Agreed Discovery Procedures:

    a.    <u>Unique Circumstances</u>. The following facts or circumstances unique to this case will make discovery more difficult or more time consuming: <u>None known at this time, except that some witnesses may be located out-of-state.</u>

Counsel have agreed to the following actions to address that difficulty: _____.

    b.    <u>Electronic Discovery Provisions</u>: Counsel have conferred regarding the preservation of electronically produced and/or electronically stored information or data that may be relevant--whether privileged or not--to the disposition of this dispute, including:

    (i)    The extent to which disclosure of such data should be limited to that which is available in the normal course of business, or otherwise;

    (ii)    The anticipated scope, cost, and time required for disclosure of such information beyond that which is available in the normal course of business;

    (iii)    The format and media agreed to by the parties for the production of such data or information as well as agreed procedure for such production;

    (iv)    Whether reasonable measures have been implemented to preserve such data;

    (v)    The persons who are responsible for such preservation, including any third parties who may have access to or control over any such information;

    (vi)    The form and method of notice of the duty to preserve;

    (vii)    Mechanisms for monitoring, certifying, or auditing custodial compliance;

    (viii)    Whether preservation will require suspending or modifying any routine business processes or procedures, records management

(Rev. 6/9/11)

procedures and/or policies, or any procedures for the routine destruction or recycling of data storage media;

(ix)    Methods to preserve any potentially discoverable materials such as voice mail, active data in databases, or electronic messages;

(x)    The anticipated costs of preserving these materials and how such costs should be allocated; and

(xi)    The entry of and procedure for modifying the preservation order as the case proceeds.

The parties agree that:

\_\_\_\_\_    No special provisions are needed in respect to electronic discovery. The court should order protection and production of such information in accordance with its usual practice.

\_\_x\_\_    As to electronically stored information, the following provisions will be followed by the parties:

<u>All requested data and documents within the scope of Federal Rules of Civil Procedure 26(b) and 34(a) that are stored electronically shall be produced in native format so as to retain, without alteration or omission, all metadata and imbedded information to the extent possible, or as otherwise agreed. In the case of electronic mail ("email"), such files should be produced, with attachments, in .PST or searchable .PDF format, without alteration.</u>

<u>In the interest of avoiding unnecessary expense and consistent with the duty of proportionality in discovery requests, concerning the restoration of the back-up tape(s), the parties agree to first review hard copy or other electronically stored versions of the documents requested prior to requesting that any back-up tapes be restored. However, both parties reserve the right to request that any and all back-up tapes containing data or documents within the scope of Federal Rules of Civil Procedure 26(b) and 34(a) be restored in the event that review of hard copy documents is unreasonable due to the magnitude of the documents to be reviewed or it is determined that not all electronically stored documents that are reasonably</u>

(Rev. 6/9/11)

<u>believed to exist may be found on the back-up tapes have been produced in hard copy or other electronic form. The parties will negotiate in good faith with regard to whether such restoration is reasonably required. To the extent an agreement cannot be reached, the party refusing to provide the back-up media will seek an appropriate protective order from the Court within fourteen (14) days to resolve such dispute.</u>

c. <u>Privileged and/or confidential communications and information.</u>

**General practice**: Under the court's general practice, if any document is withheld from production or disclosure on the grounds of privilege or work product, the producing party shall, for each document, disclose a description of the document withheld with as much specificity as is practicable without disclosing its contents, including (a) the general nature of the document; (b) the identity and position of its author; (c) the date it was written; (d) the identity and position of its addressee; (e) the identities and positions of all persons who were given or have received copies of it and the dates copies were received by them; (f) the document's present location and the identity and position of its custodian; and (g) the specific reason or reasons why it has been withheld from production or disclosure. The non-producing party may move to compel documents identified on the privilege log. The producing party may also seek a protective order to preserve the privilege or confidentiality of the documents identified.

**Special provisions.** To facilitate an early, efficient, and expeditious resolution of discovery issues which may arise related to documents withheld on the basis of alleged privilege or confidentiality, the parties shall discuss and consider:

(i) Whether the parties anticipate discovery issues or challenges arising from non-disclosure of allegedly confidential information;

(ii) Whether reasonable date ranges should be established after which privilege log entries for privileged or confidential information need not be made; and

(iii) As contemplated by Rule 502(e) of the Federal Rules of Evidence, the need for and terms of any agreement regarding disclosure of privileged attorney-client communications or

(Rev. 6/9/11)

confidential work product, and whether the parties will seek court approval of any such agreement.

The parties agree that:

_____ No special provisions are needed regarding discovery of allegedly confidential information. If such issues arise, they will be resolved in accordance with the court's general practice.

__x__ In addition to, or in lieu of the court's general practice for asserting confidentiality claims and resolving disputes over nondisclosure of allegedly confidential information, the parties agree the following provisions will be followed: <u>In the event that a party inadvertently discloses a document that is subject to a legitimate claim that the document should have been withheld from disclosure due to the Attorney-Client Privilege, Work Product Doctrine, or other available privilege or protective doctrine, the producing party shall NOT be deemed to have waived any privilege or applicable protective doctrine for that document or for the subject matter of the inadvertently disclosed document so long as the producing party had taken reasonable precautions to avoid the document's disclosure and so long as the producing party promptly requests its return.</u>

d. The maximum number of interrogatories, including sub-parts, that may be served by any party on any other party is <u>50</u>.

e. The maximum number of depositions that may be taken by the plaintiffs as a group and the defendants as a group is __7__.

f. Depositions will be limited by Rule 30(d)(1), except the depositions of _____, which by agreement shall be limited as follows: _____.

g. The parties stipulate that they will be required to give at least __5__ days' notice of their intention to serve records/documents or subpoenas on third parties prior to issuance. See NECivR 45.1

h. Other special discovery provisions agreed to by the parties include: <u>See Section I.C.</u>.

F. The following claims and/or defenses may be appropriate for disposition by dispositive motion (motion to dismiss or for summary judgment or partial

(Rev. 6/9/11)

      summary judgment): <u>Defendants believe that all claims may be appropriate for disposition by motion for summary judgment</u>. Pursuant to section I paragraph C above, the Defendants motions for summary judgment as to immunity will be made within six months, and all other issues set for summary judgment will be set by a supplemental scheduling order.

      Motions to dismiss and/or for summary judgment will be filed by <u>6 months from the date of the initial progression order</u>.

G.    Other matters to which the parties stipulate and/or which the court should know or consider: <u>See Section I.C. above.</u>

H.    Consent to Trial Before Magistrate Judge.

      In accordance with the provisions of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties in this case may voluntarily consent to have a United States Magistrate Judge conduct any and all further proceedings in the case, including the trial, and order the entry of final judgment. The consent must be unanimous, and any appeal must be taken to the United States Court of Appeals. If the parties do not presently consent, they may do so at a later time and the case will remain with the assigned United States District Judge or, if not previously assigned, will be randomly assigned to a United States District Judge.

      \_\_\_\_\_ All parties hereby voluntarily consent to have the United States Magistrate Judge conduct any and all further proceedings in this case including the trial, and order the entry of final judgment.

      __x__ All parties do not consent at this time.

I.    Trial date.

    1)    Jury Trial:

        a.    \_\_\_\_\_ No party has timely demanded a jury trial.

        b.    __x__ A party has timely demanded a jury trial and does not anticipate waiving that demand, and the parties agree that some of the claims in this case must be tried to a jury (any state law claims falling under the PSTCA are a bench trial, federal §1983 claims are a jury trial).

(Rev. 6/9/11)

  c. ___ A party has demanded a jury trial, and the parties disagree on whether trial by jury is available in this case. A motion to strike the (plaintiff's/defendant's) demand for jury trial will be filed no later than _____.

  d. _____ Having previously demanded a jury trial, the plaintiff now waives jury trial. The defendant will file a demand for jury trial within _____ days of the filing of this report, in the absence of which jury trial will be deemed to have been waived.

  e. _____ Having previously demanded a jury trial, the defendant now waives jury trial. The plaintiff will file a demand for jury trial within _____ days of the filing of this report, in the absence of which jury trial will be deemed to have been waived.

2) This case will be ready for trial before the court by: <u>Unknown at this time, see section I.C., above.</u>

If more than eight months are required, state the special problems or circumstances that necessitate that much time for trial preparation.

<u>Defendants anticipate filing motions for summary judgment based on immunity assertions after initial discovery and further progression schedule should be reserved until such motions are resolved.</u>

3) The estimated length of trial is <u>4-5</u> days.

Dated: May 15, 2017.

| WADITH STOCKINGER NADER and STACEY NICHOLE NADER, Plaintiffs,<br><br>s/ <u>Christopher J. Tjaden</u><br>Christopher J. Tjaden, #18413<br>Zachary W. Lutz-Priefert, #25902<br>Gross Welch Law Firm<br>2120 South 72nd Street<br>Suite 1500, Omaha Tower<br>Omaha, NE 68124<br>(402) 392-1500<br>ctjaden@grosswelch.com<br>zlutzpriefert@grosswelch.com<br>*Counsel for Plaintiffs* | SARPY COUNTY, L. KENNETH POLIKOV, and JENNIFER MIRALLES, Defendants,<br><br>s/ <u>Vincent Valentino</u><br>Vincent Valentino, #14288<br>Nebraska Telephone Building<br>130 South 13th Street<br>Suite 300<br>Lincoln, NE 68508<br>(402) 742-9240<br>vince@nrmainc.info<br>*Counsel for Defendants* |

(Rev. 6/9/11)

| | |
|---|---|
| THE CITY OF PAPILLION, BRYAN SVAJGL, SCOTT LYONS, and BENJAMIN IVERSEN, Defendants,<br><br>s/ Ryan M. Kunhart<br>Ryan M. Kunhart, #24692<br>Jeffrey J. Blumel, #19011<br>Abrahams Kaslow & Cassman, LLP<br>8712 W Dodge Road, Suite 300<br>Omaha, NE 68114-3419<br>(402) 392-1250<br>rkunhart@akclaw.com<br>jblumel@akclaw.com<br>*Counsel for Defendants* | |

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Vincent Valentino, Ryan M. Kunhart, & Jeffrey J. Blumel.

s/ Christopher J. Tjaden
Christopher J. Tjaden #18413

12913-1/6C27204

(Rev. 6/9/11)