IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| WADITH STOCKINGER NADER and STACEY NICHOLE NADER, | ) ) ) | Case No. 8:17-cv-83 |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) ) | |
| THE CITY OF PAPILLION; SARPY COUNTY; BRYAN SVAJGL; BENJAMIN IVERSEN; SCOTT A. LYONS; L. KENNETH POLIKOV; and JENNIFER MIRALLES, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

_____

**BRIEF IN SUPPORT OF SUMMARY JUDGMENT
BY DEFENDANTS SARPY COUNTY,
L. KENNETH  POLIKOV, and JENNIFER HESSIG F/K/A JENNIFER MIRALLES**
_____

COMES NOW, the Defendants, the County of Sarpy, Nebraska, together with L. Kenneth Polikov, and Jennifer Hessig, f/k/a Jennifer Miralles, in their individual capacities, and consistent with NECivR 7.1(a)(1)(A) and 56.1, for their Brief in Support of Summary Judgment, submit the following undisputed material facts and law.

### INDEX OF EVIDENCE

Pursuant to NECivR 7.1(a)(2)(B), Defendants offer and supply hyperlinks herein to the following items of evidence in support of their Motion for Summary Judgment:

1.  Affidavit of Jennifer Hessig, f/k/a Jennifer Miralles, with:

    Exhibit A.      Pages 14-16 of Incident Report by Bryan Svajgl.

2.      Affidavit of L. Kenneth (Lee) Polikov, with:

Exhibit A.      Office Policy Book of Sarpy County Attorney's Office;

Exhibit B.      Deputy County Attorney Benjamin Perlman's file notes.

3.      Affidavit of Benjamin G. Perlman, with:

Exhibit A.      Criminal Complaint in Sarpy County Court against Wadith Nader.

4.      Affidavit of Shelby Mertins, with:

Exhibit A.      CyberTip 3184694 from National Center for Exploited and Missing Children with supplemental reports;

Exhibit B.      CyberTip 3320099 from National Center for Exploited and Missing Children with supplemental reports;

Exhibit C:      Investigative Analysis Report of Mertins.

5.      Affidavit of Bryan Svajgl, with:

Exhibit A.      Application for Search Warrant;

Exhibit B.      Search Warrant judicially issued for Nader residence;

Exhibit C.      Affidavit for Warrantless Arrest of Wadith Nader.

6.      Affidavit of Vincent Valentino, with:

Exhibit A.      Selected public records from *State of Nebraska v. Wadith Nader*, Sarpy County District Court Case No. CR-15-1114;

Exhibit B.      Deposition transcript of Wadith Nader, with:

Deposition Exhibit 2: Plaintiff's Answers to Defendant County's Interrogatories and Responses to Requests for Production;

Exhibit C.      Deposition transcript of Stacey Nader.

## UNDISPUTED MATERIAL FACTS

1.      At all times relevant to the allegations in this case, the Plaintiffs, Wadith and Stacey Nader, resided together at 912 Hickory Hill Road, Papillion, Sarpy County, Nebraska. (Affd. Valentino, Ex. B, W. Nader Depo., p. 8:14-20; Depo. Ex. 2, Pl's Ans. to Interrog. No. 1).

2.      On December 12, 2014, the Nebraska State Patrol (NSP) received a CyberTip 3184694 from the National Center for Missing and Exploited Children (NCMEC), stemming from information generated by Microsoft. (Affd. Valentino, Ex. B, W. Nader Depo., p.35:10-

37:8); (Affd. Mertins, ¶4-5, Ex. A, B, C); (Affd. Svajgl, ¶1-3; Ex. A, B).

3.      Within CyberTIp 3184694, Microsoft reported to NSP that on December 3, 2014, their customer with email address "wadith@hotmail.com" uploaded two included images to Microsoft Skydrive, that Microsoft reported as child pornography. (Affd. Mertins, ¶4, Ex. A); (Affd. Valentino, Ex. B, W. Nader Depo., p. 106:19-107:23).

4.      On December 20, 2014, the NSP received an additional CyberTIp 3320099 from the NCMEC, that was deemed by the NCMEC to be related to the previous CyberTip 3184694, again stemming from information generated by Microsoft. (Affd. Mertins, ¶4, Ex. B); (Affd. Valentino, Ex. B, W. Nader Depo., p. 106:19-107:23); (Affd. Svajgl, ¶4, Ex. A).

5.      Within CyberTip 3320099, Microsoft reported that on December 3, 2014, their customer with the email address "wadith@hotmail.com" had uploaded five included images to Microsoft Skydrive, that Microsoft reported as child pornography. (Affd. Mertins, ¶4, Ex. B); (Affd. Valentino, Ex. B, W. Nader Depo., p. 106:19-107:23); (Affd. Svajgl, ¶4, Ex. A).

6.      NSP sent the information contained in CyberTips 3184694 and 3320099 to the Papillion Police Department for further investigation, and the matter was assigned to Detective Bryan Svajgl, one of its certified law enforcement officers. (Doc. 27, ¶22); (Affd. Mertins, ¶4, Ex. A, B); (Affd. Svajgl, ¶1-7).

7.      Over approximately three months between December 22, 2014, and March 16, 2015, Detective Svajgl of the Papillion Police Department conducted an investigation in connection with CyberTips 3184694 and 3320099, including: (Affd. Svajgl, ¶1-23, Ex. A, B).

    7.1.    Confirming that the images within the CyberTips were pornographic and depicted certain child victims from other counties previously identified by law enforcement. (Affd. Svajgl, ¶5-7, Ex. A, B).

    7.2.    Verifying the owner of the "wadith@hotmail.com" email address as Wadith ("Paul") Nader. (Affd. Svajgl, ¶8, Ex. A, B).

    7.3.    Confirming Century Link as the internet provider service to the Nader household, obtaining a subpoena to Century Link to obtain its records of online activities of the IP (internet protocol) address provided to Wadith Nader during the dates and times reported by Microsoft as when the

pornographic images were downloaded, and confirming that the subpoena response corroborated suspicion that Wadith Nader had downloaded the images referenced in the CyberTips. (Affd. Svajgl, ¶8, 12-14, Ex. A, B).

7.4.    Conducting personal surveillance of the Nader residence and making inquiries into public records and work associates to confirm the identity of Wadith (Paul) Nader. (Affd. Svajgl, ¶9-11, Ex. A, B).

8.      On March 16, 2015, Detective Svajgl submitted to the Honorable Judge Hutton of the Sarpy County Court his own affidavit outlining the facts that he believed established probable cause for a search warrant of the Nader residence to locate evidence of a suspected violation of the laws of the State of Nebraska by Wadith Nader, specifically Neb. Rev. Stat. §28-813.01 (possession of child pornography) and Neb .Rev. Stat. §28-813.03 (distribution of child pornography). (Affd. Svajgl, ¶16-23, Ex. A).

9.      On March 16, 2015, based on examination of Detective Svajgl's application and affidavit of probable cause, Judge Hutton authorized and signed a search warrant permitting law enforcement to enter the Nader residence and seize certain identified electronic devices that were the subject of the suspected criminal activity described above as revealed by Detective Svajgl's investigation. (Affd. Svajgl, ¶23, Ex. A, B).

10.     On Tuesday, March 17, 2015, at approximately 11:05 a.m., Detective Svajgl and several other police officers from Papillion and LaVista Police Departments served the search warrant at the Nader residence on Wadith Nader when he answered the door and officers were able to confirm his identity. (Affd. Valentino, Ex. B, W. Nader Depo., p. 60:15-61:23; 62:824; 63:11-64:19); (Affd. Svajgl, ¶24-25).

11.     Several cell phones and computers and hard drives were seized by the officers from the Nader residence as evidence authorized to be collected by the search warrant, with the intention that these items would be later analyzed by a forensic expert to ascertain the location of the seven pornographic images referenced in the CyberTips referenced above, after Wadith Nader admitted to officers that he had downloaded thousands of pornographic photos from a website believing that all were legal-aged females, and would usually view pornography during the day for a couple of hours at a time. (Affd. Valentino, Ex. B, W. Nader Depo., p. 49:1-50:7); (Affd. Svajgl, ¶24-35, Ex. B, C).

4

12.    While at the Nader residence executing the search warrant, Detective Ben Iverson of the LaVista Police Department ran a preliminary scan on one of the HP Envy computers found within the residence, and noted various named file folders named with words that could describe various types or styles of pornography, verified that a very large volume of pornographic image files were contained therein, and he flagged one image as possible known child pornography. (Affd. Svajgl, ¶35, Ex. C).

13.    The Sarpy County Attorney's Office assigns one of its several Deputy County Attorneys in its Criminal Division to be "on call" to answer any calls from law enforcement officers that commonly arise in the ordinary course of business, such as questions regarding active investigations, enforcement of court orders, search warrants, bond hearings, court appearances, or similar matters. (Affd. Polikov, ¶1, 2, 4).

14.    While still at the Nader residence executing the search warrant on March 17, 2015, Detective Svajgl called the Sarpy County Attorney's Office, and was connected to Jennifer Miralles (now known as Jennifer Hessig), who happened to be the Deputy County Attorney serving in the "on call" role at that time. (Affd. Hessig, ¶1-3); (Affd. Svajgl, ¶38).

15.    Neither Detective Svajgl nor Jennifer Miralles specifically recollects the details of the telephone conversation that transpired between them on March 17, 2015, but each has attested under oath that, they believe that Detective Svajgl would have described evidence gathered in his investigation and in the execution of the warrant that he believed established probable cause to believe a crime had been committed by Wadith (Paul) Nader, to support a warrantless arrest of Wadith Nader. (Affd. Hessig, ¶4, Ex. A); (Affd. Svajgl, ¶38-40).

16.    Detective Svajgl arrested Wadith Nader on March 17, 2015, at his residence, and served him with a Uniform Citation and Complaint for possession of child pornography in violation of Neb. Rev. Stat. §28-813.01. (Affd. Svajgl, ¶41).

17.    Deputy County Attorney Miralles is not the elected County Attorney, she did not "order" or effectuate the arrest of Plaintiff Wadith Nader, she was not physically present when the search warrant and arrest was executed at the Nader residence, and she was not personally involved in the subsequent criminal prosecution of Wadith Nader by the Sarpy County Attorney's Office. (Affd. Hessig; ¶4-7, Ex. A); (Affd. Polikov,¶5); (Affd. Svajgl,

¶38-40); (Affd. Perlman, ¶3).

18.    Following the arrest of Wadith Nader on March 17, 2015, Detective Svajgl prepared and presented to the Sarpy County Court an Affidavit in Support of a Warrantless Arrest, and the reviewing Judge signed a Probable Cause Detention Order on March 18, 2015, authorizing the detention of Wadith Nader.(Affd. Svajgl, ¶43-47, Ex. C); (Affd. Valentino, Ex. A).

19.    Later in the day on March 18, 2015, Deputy Sarpy County Attorney Laurie Burgess filed formal criminal charges against Wadith Nader consisting of seven counts of Possession of Child Pornography, a Class III Felony. (Affd. Perlman, ¶3, Ex. A).

20.    After the filing of the above formal charges, the Sarpy County Attorney's Office internally assigned prosecutorial duties to Deputy County attorney Ben Perlman. (Affd. Polikov, ¶1, 2, 6, Ex. B); (Affd. Perlman, ¶3, Ex. A).

21.    Nader retained legal counsel in the criminal case but was unable to secure his release from custody until April 13, 2015, at which time he posted bond, and agreed to comply with certain conditions of his release as ordered by the District Court. (Affd. Valentino, Ex. B, W. Nader Depo., p. 53:3-8; 56:15-22; 57:3-25; 65:20-66:20; 73:7-74:2: 86:11-88:6; Ex. C, S. Nader Depo., p. 84:24-85:4); (Affd. Perlman, ¶3-5); (Affd. Polikov, ¶6, Ex. B).

22.    During the period of time of his incarceration in the Sarpy County Detention Center, Mr. Nader had access to a phone and called his wife and family members as he deemed suitable, and at all times both he and his wife Stacey Nader knew the phone conversations were being recorded and/or reviewed by the authorities. (Affd. Valentino, Ex. B, W. Nader Depo., p. 58:15-18; 66:23-67:17; 70:24-71:8).

23.    The recorded conversations between the Plaintiffs included discussion about the following topics:

    23.1.    The charges pending, or that were to be filed against Wadith Nader. (Affd. Valentino, Ex. B, W. Nader Depo., p. 154:6-23).

    23.2.    What evidence the State had against Wadith Nader. (Affd. Valentino, Ex. B, W. Nader Depo., p. 155:2-156:5).

    23.3.    What Nader's attorney Mr. Peterson had advised him about the setting or

posting of bond. (Affd. Valentino, Ex. B, W. Nader Depo., p. 57:3-59:12).

23.4.   The defense strategy to require the production of the computers seized to determine where any images of child pornography had been stored; the number of pornographic items actually contained on the computer; Mr. Nader's apologies to his wife Stacey for damaging her Air Force assignment to Spain, and causing her embarrassment and stress. (Affd. Valentino, Ex. B, W. Nader Depo., p. 157:13-158:17).

23.5.   Wadith Nader apologized to his wife for putting her in a predicament; stated he needed help, and that he was addicted to porn.(Affd. Valentino, Ex. B, W. Nader Depo. p. 67:18-68:2).

23.6.   Wadith Nader discussed his wife's ability to have her assignment to Spain "coded"  so it wouldn't hurt her Air Force career opportunities as well as her desire to retire from the Air Force after 20 years. (Affd. Valentino, Ex. B, W. Nader Depo., p. 157:9-158:17).

23.7.   Wadith Nader expressed opinions on the defense legal strategy for the criminal case, including his defense of not "knowingly" downloading child porn from a website that he believed was "legal." (Affd. Valentino, Ex. B, p. 33:5-9; 65:16-19;155:2-10).

24.   Plaintiff Wadith Nader acknowledges that "wadith@hotmail.com" is an email account belonging to him. (Affd. Valentino, Ex. B, W. Nader Depo., p. 46:21-47:7; Depo. Ex. 2, Pl's Ans. to Interrog. No. 1).

25.   Plaintiff Wadith Nader admits that on or about December 20, 2014, he became aware he could no longer access his email account "wadith@hotmail.com" because it had been "locked" by Microsoft for violating its user's agreement, and when he then contacted Microsoft's security department to try to gain access to his account, he was told it was locked because he had downloaded pornographic images that were illegal. (Affd. Valentino, Ex. B, W. Nader Depo., p. 47:8-24; 65:1-7; 90:2-21; 156:6-16).

26.   Plaintiff Wadith Nader admits to downloading more than two million pornographic images from the website, "IMG.FAP," and that he saved many of these downloaded images as separate files on his personal desktop Hewlett Packer Pavillion (HP) computer

located in his residence, and categorized them based on the type or style of pornography displayed. (Affd. Valentino, Ex. B, W. Nader Depo., p. 30:24-31:7; 42:8-44:5; 46:8-46:20).

27.    Plaintiff Wadith Nader admits he maintained one folder of electronic pornographic image files on his HP computer that he labeled as "arely," which stood for "barely legal." (Affd. Valentino, Ex. B, W. Nader Depo., p. 36:7-37:8).

28.    Plaintiff Wadith Nader admits that at one time, the file folder on his computer labeled as "arely" contained the seven pornographic images referenced in CyberTips 3184694 and 3320099. (Affd. Valentino, Ex. B, W. Nader Depo., p. 37:13–41:11; 90:2-91:21; 154:6-23).

29.    According to forensic examination by the NSP, the seven images referenced in the above described CyberTips were located on Nader's HP computer that was seized by law enforcement as described above, but at some unknown point in time these images were moved by a user of Nader's personal desktop computer from their original location in the "arely" folder, to the "recycle bin" of the personal computer. (Affd. Mertins, ¶4-5, Ex. A, B, C).

30.    A technician investigator with the NSP Forensics Lab, Shelby Mertins, reviewed the "search history" of Nader's personal computer, and observed fourteen (14) separate categories of "teen porn" searches made on it. (Affd. Mertins, ¶5, Ex. C).

31.    Plaintiff Wadith Nader conceded at his deposition in this case that the seven images referenced in the Cybertip were likely uploaded by some user to the "IMFG.FAP" website, and he then mistakenly downloaded them to his email in two separate downloads as a file "batch," without knowing that these seven particular images included the "batch" of pornographic images he downloaded contained child pornography. (Affd. Valentino, Ex. B, W. Nader Depo., p. 42:8-44:5; 106:19-107:23).

32.    Plaintiff Wadith Nader testified at his deposition that upon discovering later after downloading them that these particular seven images depicted children, he likely was offended by them, and removed them from his existing folders containing adult pornography, to his recycle bin where they were possibly later located by law enforcement. (Affd. Valentino, Ex. B, W. Nader Depo., p. 37:13-39:2).

33.    Plaintiff Wadith Nader's defense in his criminal case was that he did not "knowingly" download the child pornographic images he was charged with. (Affd. Valentino, Ex. B, W.

8

Nader Depo., p. 65:16-68:2; 155:2-12; 163:9-18).

34.    On or about October 7, 2015, personnel at the NSP forensics lab advised prosecuting Deputy County Attorney Ben Perlman that they would be unable to supply testimony that Mr. Nader "knowingly" or "intentionally" downloaded child pornography from the website IMFG.Fap. (Affd. Mertins, ¶6); (Affd. Polikov, ¶6, Ex. B); (Affd. Perlman, ¶6-7).

35.    Based on the inability to obtain testimony from NSP that he perceived would be likely needed to successfully prosecute the case, Deputy County Attorney Ben Perlman dismissed the criminal charges against Wadith Nader on October 7, 2015. (Affd. Mertins, ¶6); (Affd. Polikov, ¶6, Ex. B); (Affd. Perlman, ¶6-9).

36.    Stacey Nader, the wife of Wadith Nader, has never been arrested or charged with any crime based on the above described conduct of her husband. (Affd. Valentino, Ex.C, p. 40:15-42:11).

37.    Stacey Nader chose to retire after twenty-plus years of military service, with her full pension, due in part to her permanent medical condition of kidney stone reoccurrence. (Affd. Valentino, Ex. C, S. Nader Depo., p. 35:12-36:13; 42:9-11; 61:14-64:15; 69:10-71:6).

38.    L. ("Lee") Kenneth Polikov was the elected Sarpy County Attorney at all times pertinent to Plaintiff's allegations, but he was not personally involved in the arrest of or subsequent criminal prosecution of Plaintiff Wadith Nader. (Affd. Polikov, ¶1, 4).

39.    Sarpy County Attorney Polikov ensures that his staff of Deputy County Attorneys are trained by shadowing more experienced members of the prosecutorial staff, through requirements to complete continuing legal education, and other training, and his only written policy book contains general office practices. (Affd. Polikov, ¶1-6, Ex. A).

## ARGUMENT

Plaintiff's Amended Complaint (Doc. 27), brings suit under 42 U.S.C. §1983 against the County of Sarpy, Nebraska, as well as its County Attorney Mr. Polikov and one of its former Deputy County Attorneys Jennifer Miralles (n/k/a Hessig), alleging that they "unconstitutionally seized and confined" Plaintiff Wadith Nader (Count I), maliciously prosecuted him (Count II), conspired to violate his civil rights (Count III), and contending that these alleged violations were caused by the policies, practices, and customs of the

County (Count IV). As explained below, these Defendants are entitled to summary judgment with respect to each of these claims.

I.    THERE CAN BE NO FOURTH AMENDMENT VIOLATION BECAUSE PROBABLE CAUSE EXISTED FOR THE SEARCH, ARREST AND PROSECUTION OF WADITH "PAUL" NADER ON CHILD PORNOGRAPHY POSSESSION

It is axiomatic that the Fourth Amendment's prohibition against unreasonable seizures is not violated where evidence establishes the existence of probable cause to arrest a suspect. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317 (1983). Officers involved in an arrest are entitled to qualified immunity where even "arguable probable cause" exists to support an arrest. Bernini v. City of St. Paul, 665 F.3d 997 (8th Cir. 2012). Under the asserted §1983 theory, an official is liable only for his own misconduct, and is not accountable for the misdeeds of his agents. Whitson v. Stone County Jail, 602 F.3d 920 (8th Cir. 2010).

Plaintiff's claims as relate to Defendant Jennifer Miralles rest solely upon allegations that she "directed" or "ordered" Detectives Svajgl and Iverson to arrest Mr. Nader despite a supposed lack of evidence, and that this was done by her as part of some kind of unlawful "plan" with the Papillion law enforcement officers. (Doc. 27, ¶36, 57, 64, 69). Plaintiff contends that "no reasonable County Attorney" would have done this. As relates to County Attorney Polikov, Plaintiff's Amended Complaint supplies no factual allegations of any particular acts or omissions by him personally. Presumably, Plaintiff attributes her "inadequate training" allegations to Mr. Polikov. (Doc. 27, ¶76-81).

As a threshold matter, the evidence submitted establishes that neither Defendant Miralles, nor Defendant Polikov had the personal involvement necessary in Wadith Nader's arrest or subsequent confinement as would be necessary to establish §1983 liability.

But in any event, the evidence submitted shows as a matter of law that Papillion law enforcement officers possessed more than sufficient probable cause for the issuance of the search warrant of the Nader residence and electronic devices. The evidence also shows that the subsequent Order of Detention to hold Wadith Nader after his arrest was likewise supported by probable cause. (Affd. Valentino, Ex. A). Detective Bryan Svajgl

prepared affidavits that meticulously laid out the details of his investigation concerning the Microsoft CyberTips information provided to law enforcement by the National Center for Missing and Exploited Children. Detective Svajgl personally verified that the seven reported pornographic images depicted known child victims. He verified that the images were downloaded to a particular email address and electronic device associated with Wadith (Paul) Nader, using an IP address associated with that name and his residence address at 912 Hickory Hill Road, Papillion, Sarpy County, Nebraska. A different neutral, detached Judge reviewed each of the affidavits prepared by the Detective, and by their respective signatures, agreed that probable cause supported the search warrant, and then the Detention Order, that were issued.

Nor does Plaintiff Wadith Nader, in this civil action, deny that the seven images reported in the CyberTips were downloaded to his HP Pavillion Envy laptop where he stored thousands of pornographic images. Nader's primary contention for his defense in the criminal case was that he did not "knowingly possess" such seven child pornographic images, and had likely deleted those images to his recycle bin as he was "offended" by them. However, that explanation does not vitiate the reasonable cause for the issuance of the search warrant for the electronic devices seized or his subsequent arrest.

In State v. Schuller, 287 Neb. 500, 643 N.W.2d 626 (2014), the Nebraska Supreme Court affirmed the trial court's conviction of Matthew Schuller, who challenged the search warrant issued for his electronic devices by law enforcement by utilizing a "file sharing search" for IP addresses suspected of sharing files containing child pornography files with other connected computers. The investigator had requested that a "county attorney subpoena be issued for the internet service provided for the relevant subscriber information, which generally includes a subscriber's name and  physical address." The investigator then put together an affidavit seeking the search warrant, after determining the images being downloaded to Schuller's email and IP address were in fact deemed to be child pornography. The affidavit contained information regarding the investigator's training, the typical information processes he used to identify the type of evidence he hoped to find at the residence of the defendant, and the type of items he wished to seize. The county court judge granted his request for a warrant.

11

In his later motion to suppress the search warrant, Schuller argued that the investigator's affidavit was deficient for omitted information that "tainted" the judge's probable cause finding. Schuller contended that the investigator failed to explain the "IP address dynamic," and that no factual information was presented to support the "knowing possessing" element of the possession of child pornography statute. The trial court overruled the motion to suppress and convicted Schuller of one count of possession of child pornography over a certain time frame during which he searched for, downloaded, viewed and then deleted such items. The Supreme Court of Nebraska affirmed, finding that there was no proof that the affiant officer intentionally or with reckless disregard for the truth, offered false or misleading statements necessary to establish probable cause. Further, the Supreme Court rejected Schuller's interpretation of the "knowingly possess" element of the crime. The Court held that "constructive possession" of child pornography can exist, and this can be established by proof that the defendant procured or accessed it, even if the "temporary internet files" containing the images are subsequently deleted from the computer.

Accordingly, Schuller applies to this case, and demonstrates that a reasonable law enforcement officer or county attorney would have believed Plaintiff Nader's residence, electronic devices, or his person was otherwise subject to search, seizure, or arrest under the Fourth Amendment or the Due Process Clause. More than sufficient evidence existed for the issuance of the search warrant, detention order, and criminal charges filed regarding Nader's possession of child pornographic images found on the electronic devices under his custody or control. *See*, U.S. v. Hyer, 498 Fed. Appx. 658 (8th Cir. 2013), (*not selected for permanent publication*) (citing cases involving search warrants in child pornography cases).

In short, where the arresting law enforcement officers possessed probable cause, it directly follows that the two named attorney prosecutors, even if they had been directly involved in such arrest or confinement, cannot be liable for a Fourth Amendment violation.

II.    SARPY COUNTY ATTORNEY POLIKOV AND DEPUTY SARPY COUNTY
       ATTORNEY JENNIFER HESSIG (F/K/A MIRALLES) ARE ENTITLED TO
       ABSOLUTE IMMUNITY FROM PLAINTIFF'S §1983 CLAIMS

       The doctrine of absolute immunity for prosecutors who function within the criminal
justice system as advocates for any state attorney's office or state or district or county
prosecutor was established in Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984 (1976). The
decision in Imbler represents the first time the United States Supreme Court addressed the
absolute immunity state prosecutors should have from suits under 42 U.S.C. §1983. The
common law provided for immunity from suits for malicious prosecution and for defamation,
and the Court found that similar immunity should be extended to state prosecutors for
actions brought against them under 42 U.S.C. §1983. The Court reasoned that state
prosecutors would be "chilled" in their decision making processes in the initiating and
conducting prosecutions, including exercising their independent judgments in criminal
litigation, if they were subject to harassment by unfounded §1983 litigation.

       Later, in Burns v. Reed, 500 U.S. 478, 487 111 S.Ct. 1934, 1940 (1991) the United
States Supreme Court was presented with the specific question of whether the absolute
prosecutorial immunity recognized in Imbler is applicable to: (a) a prosecutor's participation
in a probable cause hearing, which led to the issuance of a search warrant; and (b) the
prosecutor's advice to the police regarding the use of hypnosis on a suspect, and the
existence of probable cause to arrest the suspect.

       The Burns Court held, on the first issue, that the appearance of a prosecutor for the
state in a probable cause hearing where the prosecutor examined a witness and
successfully supported the application for a search warrant, that such prosecutor was
absolutely immune from liability in a §1983 suit. However, with respect to the second issue
presented, that of giving legal advice to the police on the use of hypnosis to interview a
suspect, the Supreme Court stated that it is not necessary to accord absolute immunity to
such a function, since no common law immunity existed for such a function. Further, the
Court noted that since the qualified immunity standard is today more protective of officials
than it was at the time Imbler was decided, that it would be incongruent to allow
prosecutors absolute immunity for providing advice to the police, while allowing police

13

officers only qualified immunity for following such advice. *Id.* at 495. The Court noted the "irony" that such expansion, "would mean that the police, who do not hold law degrees, would be required to know the clearly established law, but prosecutors would not." *Id.* at 495.

In Van de Kamp v. Goldstein, 555 U.S. 335, 129 S. Ct. 855 (2009), the United States Supreme Court expanded the doctrine of absolute immunity for prosecutors. The Court found that it extends to include certain interoffice administrative functions that consist of a type directly connected to the conduct of a trial, such as the alleged failure to institute a system of "inter-office information sharing" regarding the use of jailhouse informants, or the alleged failure to adequately train or supervise such sharing of information among other office prosecutors. The Court explained that such tasks necessarily require the use of legal knowledge, and related discretion, to determine what should be included in the training and supervision of office prosecutors, and therefore justify immunity.

In the present case, information was provided to the Sarpy County Attorney's Office by a law enforcement officer tasked by his police department with investigation of Nader's alleged criminal activity. The elected County Attorney, Defendant Polikov, or any of his deputy county attorneys, could have reviewed such information and offered a legal opinion to law enforcement concerning the existence of probable cause, as part of a routine "pre-charging process." Defendant Deputy County Attorney Miralles (now Hessig) did nothing more than perform an internal office administrative process likely carried out on nearly a daily basis in every state prosecutor's office. In every instance, while law enforcement officers are responsible for executing search warrants and effectuating arrests, formal criminal charges are formulated to be filed by the office of County Attorney's . It is a part of the administrative system of the County Attorney's Office to have a "day" deputy assigned to take calls related to developing criminal cases that will eventually come into their office.

Further, the claims regarding the failure to train or supervise alleged in the Amended Complaint apparently target the elected County Attorney Polikov, who did not personally or directly participate in the search, arrest, or prosecution of which Plaintiffs complain. But training and supervision of deputies within the County Attorney's Office are likewise office

14

administrative functions tied to the charging and prosecution functions of the office of County Attorney. These too, are functions for which County Attorney Polikov is absolutely immune.

To the extent that Deputy County Attorney Miralles gave the "on scene" officer "advice" under existing law to arrest or otherwise take Wadith Nader into custody pending a charging decision, such action is a typical prosecutorial function, and is also entitled to absolute immunity.

III.   AT A MINIMUM, DEFENDANTS MIRALLES AND POLIKOV ARE ENTITLED TO QUALIFIED IMMUNITY FROM THE §1983 CLAIMS, AND STATUTORY SOVEREIGN IMMUNITY AS RELATES TO ANY STATE LAW MALICIOUS PROSECUTION CLAIM

Even if absolute prosecutorial immunity does not apply to Plaintiff's §1983 claims as relate to Miralles and Polikov, at a minimum, they are entitled to qualified immunity from such claims. As noted in Messeschmidt v. Millender, 565 U.S. 535, 546 (2012), qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments," and "protects all but the plainly incompetent or those who knowingly violate the law" as relates to §1983 claims against County officials sued in their individual capacities.

The action of a state prosecutor in providing any legal advice to an investigator who is acting within the scope of his law enforcement duties, is categorically protected by qualified immunity. Parsons v. McCann, 138 F.Supp. 3d 1086, 1106 (D.Neb. 2015) (citing Brodnicki v. City of Omaha, 75 F.3d 1261, 1266 (8th Cir.1996)). Whether reasonable cause or probable cause exists for the arrest or taking into custody a suspect by an officer at the scene is a question of law. Brodnicki, supra, at 1264; Parsons, supra, at 1106-1107. Neb. Rev. Stat. §29-404.02 and §29-404.03 provides specific statutory authority for a law enforcement officer to arrest a suspect without a warrant for a felony or misdemeanor based upon "reasonable cause," which clearly existed here based on the evidence presented. Miralles and Polikov did nothing but, at most, concur in the decision of the law enforcement officers here to arrest and confine Mr. Nader pending resolution of legitimate

15

criminal charges.

The United States Supreme Court has determined that resolution of a government employee's entitlement to qualified immunity at the earliest possible stage of proceedings is so important that it may justify more than one successive interlocutory appeal if it is denied by the trial court. Behrens v. Pelletier, 516 U.S. 299, 116 S.Ct. 834 (1996).

As explained in by the Eighth Circuit Court of Appeals in Brockinton v. City of Sherwood, Ark., 503 F.3d 667, 671 (8th Cir. 2007):

> Summary judgment is appropriate if there is no genuine issue of material fact and the movants are entitled to judgment as a matter of law.  In a qualified immunity case, however, this does not mean that the court should deny summary judgment any time a material issue of fact remains on the constitutional violation claim because to do so could undermine the goal of qualified immunity.

In order to overcome a qualified immunity assertion, a plaintiff must do more than offer his bare assertions, but must produce sufficient evidence to create a genuine issue of fact as to whether the individual defendant violated his clearly established right.  Hedges v. Poletis, 177 F.3d 1071 (8th Cir. 1999); Carpenter v. Gage, 686 F.3d 644 (8th Cir. 2012). Even as the non-moving party, to overcome a summary judgment motion, a plaintiff must still present evidence sufficiently supporting the disputed material facts such that a reasonable jury could return a verdict in his/her favor, and simply referencing the complaint, or alleging that a fact is otherwise than shown by evidence, is insufficient to show there is a genuine issue for trial. Kountz ex. rel. v. Hitchcock Foundation v. Gaines, 536 F.3d 813, 818-818 (8th Cir. 2008); Pope v. ESA Services, Inc., 406 F.3d 1001-1004 (8th Cir. 2005).

In this case, the Plaintiff Wadith Nader is relying upon the following excerpt from Detective Bryan Svajgl's report to conclude, in their view, that Ms. Miralles "ordered the arrest" of Wadith Nader:

> *"I had contact with Sarpy County Attorney Jennifer Miralles and briefed her on the circumstances revolving around this case. She agreed to take custody of Wadith Nader based on the previous confirmed photographs that were reported to be uploaded to Microsoft SkyDrive. Miralles advised that the County Attorney's Office would amend additional counts after the analysis of the digital evidence was complete if needed."*

16

As noted in Ms. Hessig's affidavit, she never "ordered" the arrest of Mr. Nader, as claimed by the Plaintiffs and further, the phrase "she agreed to take custody of Wadith Nader..." is simply incorrect. Because it is undisputed that Deputy County Attorney Miralles (now Hessig) was not present at the scene of the arrest to take Nader into custody, there is an obvious scrivener's error by Detective Svajgl in his report on that point, which he acknowledges in his own affidavit submitted herein. The evidence shows that at the time of the alleged events, Defendant Miralles was a thirteen year veteran prosecutor, who would have advised Detective Svajgl that more than sufficient cause existed for Nader's warrantless arrest and subsequent detention, to then appear before a judge on charges to be filed within the time allowed by law by the County Attorney's Office. As explained above, the evidence shows no reason that Polikov would have known that his policies would lead to any alleged constitutional violation of this nature, as there is no evidence of any prior wrongful prosecution by his office. As such, the evidence shows that Defendants Miralles and Polikov are each entitled to qualified immunity from any §1983 claim asserted against them in their respective individual capacities.

Furthermore, to the extent Plaintiff Nader asserts a tort claim of "malicious prosecution," such a claim is exclusively governed by the Nebraska Political Subdivisions Tort Claims Act found at Neb. Rev. Stat.§13-901, *et seq*., Britton v. City of Crawford, 282 Neb. 374, 803 N.W.2d 508 (2011). The exemption found at Neb. Rev. Stat.§13-910(7) specifically retains sovereign immunity for the County and its officials/employees with respect to claims of "malicious prosecution, abuse of process, false arrest, or false imprisonment." *See*, Stagemeyer v. County of Dawson, Nebraska, 205 F.Supp.2d 1107, 1118-1119 (D. Neb. 2002). Accordingly, the County, Polikov, and Miralles are entitled to summary judgment with respect to such claim.


IV.    THE EVIDENCE SHOWS THAT PLAINTIFF'S CIVIL CONSPIRACY CLAIM AGAINST POLIKOV AND MIRALLES MUST FAIL

Plainitffs' "conspiracy" allegations are not supported by any legal precedent. In Parsons v. McCann, *supra* at 1112, the Federal District Court noted that to succeed on a conspiracy theory, there must be an underlying constitutional deprivation recognized as

"clearly established," and stated the following:

> Further, because Plaintiff's claims against Beadle for false arrest and unlawful imprisonment must be dismissed, the civil conspiracy claim based on that arrest and imprisonment must also be dismissed.

Similarly, here, where no underlying constitutional violation of unlawful seizure or arrest occurred, there can be no conspiracy claim made.

V.    THERE IS NO UNCONSTITUTIONAL POLICY, CUSTOM OR PRACTICE OF THE COUNTY OF SARPY THAT SERVED AS THE "MOVING FORCE" BEHIND ANY CONSTITUTIONAL VIOLATION

For purposes of the civil rights claims brought pursuant to 42 U.S.C. §1983 against the County of Sarpy, Nebraska, it is well established that there can be no liability under a *respondeat superior* theory. Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018 (1978); Vaughan v. Greene County, Arkansas, 438 F. 3d 845 (8th Cir. 2006); Luckert v. County of Dodge, Nebraska, 684 F. 3d 808 (8th Cir. 2012). Instead, a governmental entity can be held liable for the acts of its employees in contravention of an individual's civil rights only upon a showing of an unconstitutional act by a "policymaker," or the existence of some unlawful policy, custom, or a failure to train, which is the motivating force that caused the constitutional violation. Rogers v. City of Little Rock, 152 F.3d 790, 798 (8th Cir. 1998).

In order for municipal liability to attach under either a "policy/custom" or "failure to train" theory, there must be an underlying predicate constitutional violation by one or more individual employees. Brockington v. City of Sherwood Ark., 503 F.3d 667, 673-674 (8th Cir. 2007); *See also,* Stagemeyer, *supra,* at 1116-1117 (noting that where all constitutional claims against individually named defendants fail, or are not a "moving force", dismissal of the municipal liability claims is warranted). For all the reasons described above, there is insufficient allegations or evidence to support Plaintiff's theories as against either the individually named County Attorney or his Deputy Miralles, and this alone is fatal to their claims against the County of Sarpy, Nebraska.

To establish the existence of a "policy" for purposes of a §1983 claim, the plaintiff

18

must point to a formally promulgated county policy which caused the alleged constitutional violation, such as an ordinance, rule, or regulation. Stagemeyer v. County of Dawson, 205 F. Supp. 2d 1107, 1116-1117(D. Neb. 2002).

To establish an unlawful "custom" for purposes of §1983, the plaintiff must show "a continuing, widespread, persistent pattern of unconstitutional misconduct." *Id at* 1116. It therefore follows that proof of a single incident of unconstitutional conduct is insufficient to establish liability of a municipal government. Stagemeyer, *supra*, 1117; Pembaur v. City of Cincinnati, 475 U.S. 469, 106 S.Ct. 1292 (1986). Even if unlawful policies or customs do exist, to establish a cognizable due process claim under §1983, the plaintiff must also show that said policies or customs "shock the conscience," which is a question of law for the judge, not a question of fact for the jury. Terrell v. Larson, 396 F.3d 975, 979-81 (8th Cir. 2005).

With respect to an alleged "failure to train," only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under §1983. City of Canton v. Harris, 489 U.S. 378, 380 (1989); Connick v. Thompson, 131 S.Ct. 1350, 1359 (2011); Folkerts v. City of Waverly, 707 F.3d 975 (8th Cir. 2013). It will not suffice to prove a particular employee was unsatisfactorily trained, neither will it suffice to prove that an injury or accident could have been avoided if an employee had better or more training. City of Canton, *supra,* at 391. Adequately trained personnel "occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the [municipality] liable." City of Canton*, supra*, at 391. As noted by the Eighth Circuit Court of Appeals in Vaughan v Greene County, Arkansas, *supra*:

> Under this [*failure to train*] theory of liability, Vaughan must demonstrate Sheriff Langston 'was deliberately indifferent to or tacitly authorized the offending acts'. (citation omitted).Vaughan fails to do so. We cannot say Sheriff Langston's practice of delegating to others such duties as reading mail and responding to communications regarding Jail inmates amounts to deliberate indifference. Moreover, there is no indication from the record Sheriff Langston had notice his policies, training procedures, or supervision 'were inadequate and likely to result in a constitutional violation'. (citation omitted).

19

Id. at 851.

In the present case, Plaintiffs can point to no unconstitutional policy or custom. The evidence shows that Defendant Polikov, the Sarpy County Attorney, does not have unconstitutional policies, customs or practices regarding the decision-making processes to charge or secure the prosecution of suspects involved in the type of crimes which Mr. Nader is alleged to have been involved in. He trains his Deputy County Attorneys through continuing legal education and job shadowing.

By dismissing the charges against Mr. Nader without prejudice, Mr. Polikov has hypothetically reserved the right for the State to bring such charges in the future if other evidence developed that might show Mr. Nader's "knowing" what he downloaded was child pornography, such that a reasonable jury might otherwise convict him. In his discretion, County Attorney Polikov and his deputy, Ben Perlman, made a decision based upon what Perlman was advised by the Nebraska State Patrol forensics examiner that proof of "knowing possession" was something that she could not testify to. However, the State v. Schuller, *supra,* case regarding "constructive possession" of child pornography by its mere existence in the downloaded and deleted files of Schuller, certainly supports that Nader's similar conduct would have presented a "submissible case" to a judge or jury. There was no constitutional violation here, and the policies, customs, and practices of the County as relates to criminal prosecutions as shown by the evidence are lawful. As such, the County of Sarpy, Nebraska, cannot be liable under §1983.

VI.    PLAINTIFF STACEY NADER LACKS STANDING TO ASSERT HER CLAIMS OR THEY ARE OTHERWISE BARRED, AND THE REMOVAL OF THE NADER CHILDREN FROM THE HOME DOES NOT STATE A COGNIZABLE CLAIM AGAINST THESE DEFENDANTS

Co-Plaintiff Stacey Nader is asserting the same federal causes of action as her spouse, Wadith "Paul" Nader. It is not clear if she enjoys any more than a marital interest in the residence or electronic devices that were searched by law enforcement authorities. Stacey was never herself arrested or charged with any crime. It is unlikely that Stacey has standing to assert Fourth Amendment unlawful seizure claims. *See*, U.S. v. Salvucci, 448

20

U.S. 83, 100 S.CT. 2547 (1980) (property interest is a factor in determining whether a person's legitimate expectation of privacy under the Fourth amendment has been violated.); *See also*, Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556 (1980) (claimed interest in acquaintance's purse did not vest standing in defendant to suppress evidence of his drugs located therein). To the extent Plaintiff Stacey Nader has standing to assert them, her Fourth Amendment claims are nevertheless barred for the same reason as her husband's claims - the undisputed evidence demonstrates as a matter of law that probable cause existed for the issuance of the search warrant of the Nader residence and electronic devices. She, like her husband, Wadith "Paul" Nader cannot overcome the absolute immunity or qualified immunity that the Defendants County of Sarpy, Miralles and Polikov, individually and in their official capacities, are entitled to under the law. Further, the evidence shows that Stacey Nader did not incur an injury-in-fact as would support standing. She has now retired with her twenty-plus years of military service, so her pension was not impacted by any of the Defendants' actions. The evidence shows that her permanent medical condition of kidney stone reoccurrence has had more of an impact on her career than her husband Wadith Nader's seven months of facing charges that were ultimately dismissed without prejudice.

Both Naders assert an interference with their respective rights to their children's management, care, custody, and companionship. *See*, Whisman v. Rinehart, 119 F. 3d 1303, 1309 (8th Cir. 1997). But temporary removal of a child from a home does not violate the constitutional rights of a parent or a juvenile, as the government has a compelling interest in the protection of minor children. K.D. v. County of Crow King, 434 F.3d 1051, 1055 (8th Cir. 2006). Further, the evidence shows that neither Polikov nor Miralles were responsible for removing the Naders' children from the home, so once again there is a lack of personal involvement as would be required to support liability under §1983.

## CONCLUSION

In this particular case the Plaintiffs have asserted four separate causes of action which in summary are: 1) unconstitutional seizure and confinement of Wadith Nader; 2) malicious prosecution; 3) conspiracy to violate civil rights, and 4) the unconstitutional

21

policies, practices and customs that caused the violation of civil rights. In turn, each of these claims have been addressed by the Defendants County of Sarpy, then-Deputy County Attorney Jennifer Miralles (now Hessig), and County Attorney L. Kenneth Polikov.

None of the claims have any legal merit, and the law is clear that absolute immunity, sovereign immunity, and qualified immunity apply to such claims. Under the undisputed facts presented, the undersigned Defendants are entitled to summary judgment as a matter of law.

Dated this 18th day of August, 2017.

Respectfully submitted,

SARPY COUNTY, JENNIFER HESSIG (F/K/A MIRALLES), AND L. KENNETH POLIKOV, Defendants.

BY:    s/ Vincent Valentino
       Vincent Valentino, #14288
       Nebraska Telephone Building
       130 South 13th Street
       Suite 300
       Lincoln, NE 68508
       (402) 742-9240
       vince@nrmainc.info

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and thereby electronically served copies the same upon all counsel for the parties to this action: Christopher J. Tjaden, Zachary W. Lutz-Priefert, Ryan M. Kunhart, and Jeffrey J. Blumel.

BY:    s/ Vincent Valentino
       Vincent Valentino, #14288

22