IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| WADITH STOCKINGER NADER and STACEY NICHOLE NADER, <br><br>Plaintiffs<br><br>vs.<br><br>THE CITY OF PAPILLION; SARPY COUNTY; BRYAN SVAJGL; BENJAMIN IVERSEN; SCOTT A. LYONS; L. KENNETH POLIKOV; and JENNIFER MIRALLES,<br><br>Defendants. | Case No. 8:17-CV-00083<br><br>**BRIEF IN OPPOSITION TO DEFENDANTS' POLIKOV, MIRALLES, SARPY COUNTY'S MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

This case centers around a violation of the civil rights of Wadith Nader ("Mr. Nader"), as well as the damage to his family and specifically his wife Stacey Nader ("Ms. Nader") (collectively Mr. Nader and Ms. Nader are referred to as the "Naders") as a result of the violation of Mr. Nader's civil rights. There are a total of seven Defendants in this case, each of whom were directly involved in the violation of Mr. Nader's civil rights. These individuals were as of the date of the violation of Mr. Nader's civil rights, employees or agents of two distinct political subdivisions in the State of Nebraska. Jennifer Hessig (f/k/a Miralles) ("Hessig"), is a former Deputy County Attorney in Sarpy County, Nebraska; Kenneth Polikov ("Polikov") is the County Attorney in Sarpy County, Nebraska, and the County of Sarpy ("Sarpy County") is currently Polikov's employer, and was as of the date

of the violation of Mr. Nader's civil rights, the employer of Hessig (collectively Hessig, Polikov, and Sarpy County are referred to as "the Sarpy County Defendants").

In addition to the Sarpy County Defendants, there are also four Defendants from Papillion, Nebraska. Scott Lyons ("Lyons") is the Chief of Police of the Papillion Police Department and was chief on the date of the violation of Nader's civil rights. Benjamin Iversen ("Iversen") is an employee of the Police Department of La Vista, Nebraska, however he was working as an agent of the Papillion Police Department on the day of the violation of Nader's civil rights. Bryan Svajgl ("Svajgl") was the lead detective involved in the violation of Nader's civil rights. The Papillion Police Department is the direct employer of Lyons and Svajgl, and was the principal for Iversen at the time of the violation of Nader's civil rights (Lyons, Iversen Svajgl and the City of Papillion are collectively referred to as the "Papillion Defendants").

On or about August 18, 2017, the Sarpy County Defendants filed a Motion for Summary Judgment as to all claims. This Brief is submitted by the Plaintiffs in opposition to said Motion for Summary Judgment. This Brief responds to all issue contained within the Sarpy County Defendants Brief and Motion for Summary Judgment, however, it should be noted that pursuant to this Court's Order of May 26, 2017, and as reinforced in the Sarpy County Defendants responses to discovery, the purpose of this summary judgment motion is exclusively to resolve the issues of immunity, and Plaintiffs believe that any issues not related to immunity should be disregarded.

## FACTS

In December 2014 a tip from the National Center for Missing and Exploited Children ("NCMEC") was reported to the Papillion Police Department by way of the

2

Nebraska State Patrol office. (Svajgl Aff ¶3; Svajgl Depo 43:6-10). Svajgl was named the lead detective for the case. (Svajgl Depo 35:1-3). As a result of the tip, and subsequent investigation that Svajgl conducted into the tip, Svajgl ultimately obtained a search warrant for the home of the Naders. (Svajgl Aff ¶23). Svajgl assembled a team of other detectives and officers to perform the search of the Nader home. (Svajgl Depo 45:7-14). One of the officers who was a part of Svajgl's team for the search of the Nader home was Iversen. (Svajgl Depo 46:17-21). Iversen was utilized pursuant to an agreement between local police departments (Iversen Depo 54:23-55).

When Svajgl as well as the rest of the investigatory team reached the Nader home, Iversen set out to preview the computers and other hardware owned by Mr. Nader. (Svajgl Depo 50:7-11). During the course of the search of the Nader home which lasted several hours, no images containing child pornography were found on any device owned by the Naders. (Iversen Depo 80:20-22; Svajgl Depo 62:12-17; 63:5-11; 73:11-15).

There was one image which was flagged as possible known child pornography under the search tools used by Iversen, however this image was later determined to not be child pornography, no confirmation was possible at the scene as it was impossible to view the image at that time. (Iversen Depo 48:20-23; 111:3-112:3). The image was flagged based on its hash value; both Svajgl and Iversen acknowledged that the hash value, which led to the possibility that an image was known to be child pornography is not in and of itself ordinarily sufficient to render a probable cause. (Iversen Depo 64:21-65:5; 76:23-77:8; 114:8-12; Svajgl Depo 70:23-71:8). Iversen did not review any images at the Nader home. (Iversen Depo 43:20-23). No other person was involved in the previewing of technology other than Iversen. (Iversen Depo 82:14-21). Svajgl himself did not view

any images at the Nader home, however he knew that it was necessary to view images in order to make a determination as to whether an image was child pornography. (Svajgl Depo 72:3-9).

After spending a substantial amount of time interviewing Mr. Nader, Svajgl placed a call to the Sarpy County Attorney's office where he contacted Hessig, a County Attorney whom he had worked with on prior investigations. (Svajgl Depo 97:25-97:2). One particular prior case in which Svajgl had worked with Hessig, Hessig had instructed Svajgl to investigate certain allegations of an individual who was allegedly in possession of child pornography, and per Hessig's instructions Svajgl conducted an investigation. (Svajgl Depo 97:25-97:2).

On March 17, 2015, in his police report Svajgl stated that he briefed Hessig "on the circumstances revolving around the case…" and that she agreed to take custody of Mr. Nader on the basis of the NCMEC tip. (Svajgl Depo.; Ex 76). None of the images in the NCMEC tip were found during the search of the Nader home. (Svajgl Depo 73:7-15). Svajgl now claims that this is an error in his police report (Svajgl Aff ¶40; Svajgl Depo 78:16-18), however Svajgl also claims that this error, along with other errors in his police report, was only pointed out by his attorney, and not something that Svajgl himself identified. (Svajgl Depo 81:18-20).

Likewise, Hessig now claims that she was only advising the police, and was not issuing any directives to the police department. (Hessig Aff ¶5). Ultimately, all parties have agreed that at the search of the Nader home there was no child pornography of any kind identified. Likewise, there were no other indicia that Mr. Nader was involved in the knowing procurement of child pornography. No evidence was found of encryption

software, use of chatrooms, or searches for child pornography. (Iversen Depo 93:9-11; 124:22-25; 126:23-177:2).

Ultimately, following Mr. Nader's arrest all charges against him were dismissed.

### ARGUMENT I

### THE VALIDITY OF THE SEARCH OF THE NADER HOME, AND THE FORENSIC EVIDENCE REVEALED SUBSEQUENT TO THE SEARCH OF THE NADER HOME IS IRRELEVANT TO THE ISSUES BEFORE THE COURT

With regard to qualified immunity on issues of warrantless arrests it is well-established law that the arrest is based upon the information available to the person seeking qualified immunity at the time in which the arrest is made. *Moreno v. Baca*, 431 F.3d 633 (9th Cir. 2005). The United States Court of Appeals for the Eighth Circuit stated that qualified immunity is determined based on the reasonable belief of a party "in light of all facts known at the time…." *Reece v Groose*, 60 F.3d 487, 490 (8th Cir. 1995). *See also Anderson v Creighton*, 483 U.S. 635 (1987).

Defendants rely significantly upon the subsequent information learned by them in the report of Shelly Mertens. The Mertens Affidavit and information learned within are irrelevant to the arrest of Mr. Nader, because the facts contained within Ms. Merten's report and Affidavit are subsequently discovered facts meaning they were not facts which were known to the officers, or County Attorney Hessig at the time of the arrest of Mr. Nader. As a result, to the extent that the Mertens Affidavit might potentially immunize the actions of the County Attorney, or individual police officers, they are irrelevant because it was subsequently discovered information.

Likewise, all information surrounding the validity of the search which the Sarpy County Defendants referenced are red herrings seeking to show that because some of

their conduct was valid, all of their conduct must be valid. The Naders do not dispute the validity of obtaining a search warrant, nor do the Naders dispute the validity of the search of their home. The dispute arises when the search is completed, and no evidence of any crime is obtained. As a result, any information in the Affidavits, or briefing regarding the validity of the search of the Nader home is wholly irrelevant to the issues before the Court and should not be considered.

## ARGUMENT II

### HESSIG AND POLIKOV ARE NOT ENTITLED TO ABSOLUTE IMMUNITY

The United States Supreme Court has directly addressed the issue of absolute immunity with regard to county attorneys who are merely advising officers. In 1976 the United States Supreme Court first addressed the issue of absolute immunity in *Imbler v. Pachtman* 424 U.S. 409 (1976). In *Imbler* the Court concluded that absolute immunity was available to prosecutors to the extent that the prosecutor was acting in the scope of their duties. *Id.* Over the ensuing forty years the United States Supreme Court has had ample opportunity to further define the applicability of absolute immunity. In 1991 the Supreme Court noted that the recognition of absolute immunity was to be "quite sparing." *Burns v Reed*, 500 U.S. 478 (1991). In *Burns* the Court addressed two specific issues with regard to absolute immunity: the first was whether a state prosecutor received absolute immunity when attending a hearing and presenting evidence at a hearing in support of an application for search warrant; and, second, whether a prosecutor received absolute immunity when they were advising the police in an investigative stage of a criminal action. *Id.*

With regard to the advice given to the police in the investigative stage of a criminal investigation the Court specifically concluded that it did not believe that "advising the police in the investigative phase of a criminal case is so 'intimately associated with the judicial phase of the criminal process,' *Imbler*, 424 U.S. at 430, that it qualifies for absolute immunity. Absent a tradition of immunity comparable to the common-law immunity for malicious prosecution, which form the basis for the decision in *Imbler* we have not been inclined to extend absolute immunity from liability under § 1983." *Id.* at 493.

While the Supreme Court has continued to further define the parameters of absolute immunity it has likewise continued to reinforce the notion that absolute immunity "does not apply when a prosecutor gives advice to police during a criminal investigation...." *Van de Camp v Goldstein*, 555 U.S. 335, 343 (2009). The court has also addressed instances in which prosecutors impermissibly try to extend absolute immunity. "A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually arrested, indicted, and tried that work may be retrospectively described as 'preparation' for possible trial; every prosecutor might then shield himself from liability for any constitutional wrong against innocent citizens by ensuring that they go to trial. When the functions of prosecutors and detectives are the same, as they were here, the immunity to protect them is also the same." *Buckley v Fitzsimmons*, 509 U.S. 259, 275-76 (1993).

The Sarpy County Defendants have attempted to read *Van de Camp v. Goldstein* as reversing, or otherwise somehow overruling *Burns*. However, the exact opposite is true. The *Van de Camp* court directly cites to *Burns* in reaffirming that prosecutors who are simply giving advice during the course of a criminal investigation are not entitled to

receive absolute immunity. The Sarpy County Defendants contend that giving advice is somehow the same as any other day-to-day prosecutorial tasks however this flies in the face of what the Supreme Court's precedent in *Burns*, a precedent which was reinforced by the *Van de Camp* case. In essence, the Sarpy County Defendants are attempting to do exactly what the Defendants in *Buckley* sought to do; they are attempting to shield their investigative work under the guise of absolute immunity by pigeonholing it along with another category which the Supreme Court has acknowledged as receiving absolute immunity. This is simply not allowed. By attempting to undermine the rule of law in such a fashion the Defendants are attempting to make the scope of absolute immunity increasingly broad in spite of the fact that the *Burns* court acknowledge the fact that absolute immunity was to be used quite sparingly. The Defendants acknowledge in their own Affidavits and Brief that what Hessig was doing was simply providing guidance and advice to the police during the course of a police investigation.

    Moreover, the Sarpy County Defendants are not entitled to absolute immunity on the basis of their order to make an arrest of Mr. Nader. As the Sarpy County Defendants acknowledge in their own Affidavits and pleadings, they lack the authority to actually make this order and as a result it cannot be a function of their prosecutorial duties which would grant them absolute immunity. The fact that they made the order, the fact that they acted within the scope of their authority as County Attorneys, and the exercise of the power they receive under Nebraska law which gave authority to their order, does not shield them from absolute immunity.

    Because there is clear and unquestioned Supreme Court precedent on this issue this Court must deny the Defendants' Motion for Summary Judgment as to the grounds

of absolute immunity. Because the Supreme Court has specifically ruled that advising the police during the course of an investigation is not so intimately involved or associated with the judicial phase of the criminal process that it should qualify for immunity and the Supreme Court specifically has declined to extend absolute immunity for that reason, this court should deny the Sarpy County Defendant's Motion for Summary Judgment. Further, because the Sarpy County Defendants were not exercising a prosecutorial function in the ordering of Nader's arrest, they cannot be entitled to absolute immunity. As such this Court must deny the Defendants' Motion for Summary Judgment on the grounds of absolute immunity.

## ARGUMENT III

A.  STANDARD OF REVIEW FOR QUALIFIED IMMUNITY

The Supreme Court has previously ruled that as to the issue of qualified immunity "a court required to rule upon the qualified immunity issue must consider [] this threshold question: 'Taken in the light most favorable to the party **asserting the injury**, do the facts show that the officer's conduct violated a constitutional right?'" *Saucier v Katz*, 533 U.S. 194, 201 (2001) (emphasis added). The *Saucier Court* took a hardline position that the initial inquiry had to be whether a constitutional right was violated. Subsequent Supreme Court cases have acknowledged that the two-prong process for qualified immunity does not require a rigid adherence to which portion of the analysis must come first. *See Pearson v. Callahan*, 555 U.S. 223 (2009). However, the change in which prong much be viewed first, does not undermine the conclusion of the *Saucier* court with regard to the fact that the court must view the facts in the light most favorable to the injured party. *See*

Generally *Serna v Goodno*, 567, F.3d 944 (8th Cir. 2009); *Scott v. Harris*, 550 U.S. 372 (2007).

With regard to summary judgment, "a dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Material facts are facts that might affect the outcome of the suit under the governing law." *Hayter v. City of Mt. Vernon*, 154 F.3d 279, 275 (5th Cir. 1998). "To overcome the shield of qualified immunity, a Plaintiff's claim must state a violation of a clearly established federal right, and then that right must have been clearly established at the time of the violation. Under either prong of the inquiry, the District Court **may not resolve genuine disputes of fact**, relevant to the issue of qualified immunity." *Wealot v Brooks*, 865 F.3d 1119, 11125 (8th Cir. 2017) (internal citations omitted) (emphasis added).

**B.    THE LAW REGARDING QUALIFIED IMMUNITY**

Qualified immunity shields government officials from civil lawsuits when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Baldwin v Chandler*, 60 F.3d 487, 491. Qualified immunity turns on the issue of the "objective legal reasonableness of the action." *Anderson v Creighton*, 483 U.S. at 639. As the *Anderson* Court goes on to state however, the operation of the standard for qualified immunity largely is dependent upon the "level of generality at which the relevant legal rule is to be identified." *Id.* at 639. The Court stated that "the contours of a right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640. Generally, a government official is not entitled to qualified immunity where their actions violate "clearly

established statutory or constitutional rights of which a reasonable person would have known." *Rogers v City of Little Rock, Ark.*, 152 F.3d 790, 798 (8th Cir. 1998).

C.  **PROBABLE CAUSE IS CLEARLY DEFINED**

"Probable cause exists when the totality of the circumstances at the time of the arrest [is] sufficient to lead a reasonable person to believe that the Defendant has committed or is committing an offense." *Joseph v Allen* 712 F.3d 1222, 1226 (2013) (internal citations omitted). As the Eighth Circuit has held "[i]t is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments." *Id*.

"While a reliable tip can form the basis for probable cause if it is sufficiently detailed and independently verified by a law enforcement officer using evidence other than the tip itself, **the tip is insufficient to validate an arrest where there is no evidence which supports the tipster's allegation that the suspect was committing the crime of which he is accused**." *Swartz v State*, 857 So. 2d 950 (Fla. 2003). (emphasis added). Where a reliable tip is sufficient to give officers reason to conduct a search, developments which effectively negate the tip erode any basis for probable cause that the tip itself might have established. *Roane v City of Philadelphia*, 1999 W.L. 257759 (E.D. Penn. 1999). Where an officer makes an arrest based upon an informant's tip and that tip is not corroborated by the officer's own observations or investigation the tip alone is not sufficient to support an arrest. *McGee v State*, 23 S.W. 3d 156 (Ct. Ap. Tx. 2000). An anonymous tip not corroborated by any other evidence thus not allowing for a reasonable belief that a Defendant has committed a crime will cause an officer to lack the probable cause to arrest a Defendant. *People v Mosley*, 400 Mich. 181, 254 N.W.2d 29 (1997).

"Probable cause may exist when the informant's tip is by itself insufficient but only if independent corroboration of a tip exists, and if the tip and the corroboration evidenced together 'permits the suspicions engendered by the informant's report to ripen into a judgment that a crime was probably being committed." *State v One 1975 Lincoln Mark IV*, 1981 Wl. 390975 *2 (R.I. 1981). *See also Goettl v. State*, 842 P.2d 549 (Wyo. 1992).

The Sarpy County Defendants are not entitled qualified immunity on the basis of the arrest of Mr. Nader. Svajgl's incident report itself refers to the fact that Hessig, acting in the scope of her role as County Attorney, agreed to take Mr. Nader into custody based on images which were never confirmed or found at the Nader residence leading to the appearance that it was Hessig's actions which triggered Nader's arrest. No images from the NCMEC tip were found in the Nader home. No child pornography of any kind was found in the Nader home. There simply was no reason of any kind to believe that a crime had been committed, and that it had been committed by Mr. Nader.

Svajgl by his own admission told Hessig that no confirmed image had been found at the Nader residence. A reasonable person, in particular a reasonable prosecuting attorney, would know that tips alone are not sufficient to constitute probable cause to make an arrest as the courts in *Swartz v. State*, *Roone v City of Philadelphia*, *McGhee v State*, *People v Mosely*, *Goettl v State* and *State v One 1975 Lincoln Mark IV* all concluded. More importantly, a reasonable prosecuting attorney would know that at the point where no evidence which the informed tip stated would exist at the scene of a search was found during a search, any probable cause which might have been granted by the tip is completely eradicated.

It is one of the most fundamental principles of law that in order to make an arrest probable cause must exist, and at the time of the arrest of Mr. Nader there simply was no probable cause. No child pornography was found during the search of the Nader home, and as such any probative value of the NCMEC tip was negated. Hessig knew that no arrest could be made without probable cause, and yet caused the arrest of Mr. Nader nonetheless. Taken in a light most favorable to the Naders, as the non-moving and injured party, this court should conclude that Hessig, and the other Sarpy County Defendants are not entitled to summary judgment on the basis of qualified immunity.

D. THE FACT THAT HESSIG LACKS THE AUTHORITY TO ORDER AN ARREST UNDER STATE LAW IS IRRELEVANT TO THE ISSUE OF QUALIFIED IMMUNITY

The fact that the Defendants attempt to immunize Hessig's conduct by stating that she lacks the authority to order an arrest under Nebraska law is wholly irrelevant to the issue of qualified immunity. Federal courts have frequently held that officials are not entitled to qualified immunity under 11 U.S.C. § 1983 where the governmental official "abuses the position given him by the State 'while acting in his official capacity or while exercising his responsibilities pursuant to state law.'" *Rogers v City of Little Rock, Ark.*, 152 F.3d at 798. The fact that a governmental official lacks authority to commit an action under state law does not automatically entitle the official qualified immunity particularly where that official is abusing the power given to them by the state. In the *Rogers* case a police officer used his power as a policer officer to facilitate a sexual assault, and the Eighth Circuit Court of Appeals concluded that the officer was in fact acting under color of law for purposes of the 1983 action.

In this case, Hessig used her role as a County Attorney to order an arrest. Whether she actually had the authority to make such an order or not is irrelevant because it was

13

only as result of the fact that Hessig being a County Attorney that Svajgl would rely upon her edict in making the arrest of Nader. As a result of the fact that Hessig was abusing the position given to her by the state, and was acting in her official capacity and exercising her responsibilities under state law, Hessig can be liable in spite of the fact that she legally lacked the authority to issue an order.

Further, the fact that the County Attorney's office disputes Svajgl's version of the events, as well as the fact that Svajgl is now attempting to backtrack the comments that were in his official written report, which was authored the same day or shortly after the arrest of Mr. Nader, are not reason for this Court to grant the Defendants' Motion for Summary Judgment. As the Eighth Circuit noted in *Wealot* this court is not able to resolve genuine issues of material fact at a hearing for summary judgment. Further, as the *Serna* court noted the facts are reviewed in the light most favorable to the injured party, in this case Mr. Nader, and as the *Hayter* case acknowledges if the facts are such that a jury could decide in favor of the non-moving party then a genuine issue of material fact exists.

The report by Svajgl is sufficient evidence to allow a reasonable jury to make a conclusion that Mr. Nader's rights were violated. A reasonable jury could be expected to conclude that the evidence of the events as they happened in 2015 is more accurate than the recollection of any party today, particularly since Svajgl's testimony is that he did not discover the alleged errors in his report himself, and instead was only notified of them by his attorney. Further, a reasonable jury could conclude that Hessig ordered a violation of Mr. Nader's rights based upon Svajgl's report, and by a review of the totality of the facts, and that fact in and of itself is sufficient reason to deny the Sarpy County Defendants' Motion for Summary Judgment.

## ARGUMENT IV

### THE UNDERLYING CLAIMS ARE ESTABLISHED TO AVOID SUMMARY JUDGMENT ON THE ISSUE OF CONSPIRACY

As the Eighth Circuit Court of Appeals has previously acknowledged where there is no constitutional violation a claim for conspiracy to violate constitutional rights may not exist as a stand-alone action. *Slusarchuk v. Hoff*, 346 F.3d 1178. However, where a party has an actionable claim for a violation of a civil right, it necessarily follows that the party at least has a potential claim for conspiracy.

As discussed in more detail above, the Sarpy County Defendants are not entitled to absolute or qualified immunity as a means of protecting them from their violation of Mr. Nader's civil rights. Because Mr. Nader's claims for violation of his constitutional rights are still viable, this Court should not grant summary judgment as to the cause of action concerning conspiracy. Further, because this issue is outside of the contemplated scope of this Court's May 26, 2017 Order regarding motions for summary judgment the Sarpy County Defendant's Motion for Summary judgment should be denied.

## ARGUMENT V

### THERE IS A CLEAR UNDERLYING FAILURE TO TRAIN OR FAILURE TO SUPERVISE WHICH RESULTED IN THE VIOLATION OF MR. NADER'S RIGHTS

The Constitutional violation suffered by Mr. Nader is a direct result of the failure of Sarpy County to train its employees. As a general rule, municipalities may be found liable under 11 USC § 1983 where they have instituted lawful policies, but have failed to adequately train or supervise their employees which then lead to the violation of an individual's civil rights. *Brossart v Janke*, 859 F.3d 616 (8th Cir. 2017). Likewise, an

unofficial custom of a municipality also may give rise to liability for the municipality. *Malone v Hinman*, 847 F.3d 949 (8th Cir. 2017).

In this case, the failure of Sarpy County to adequately train its employees is clear on its face based upon the actions of Hessig. A reasonable prosecuting attorney knows the law regarding probable cause, including what things might negate probable cause, and which actions or pieces of evidence in and of themselves without sufficient other evidence, do not give rise to probably cause. In spite of the fact that a County Attorney should know these things, and should be trained and instructed in these things by their employer, Hessig in a blatant disregard for Mr. Nader's rights, ordered an arrest of Mr. Nader which contradicted virtually all the rules concerning probable cause including the fact that there was no corroboration of evidence, and the fact that there was no evidence that Mr. Nader knowingly took any actions to procure child pornography, as well as the fact that that the search of the Nader home in fact indicated that there was no evidence of a crime being committed.

Because Sarpy County has clearly failed to train its employees adequately, Sarpy County, as well as head prosecutor, Polikov, should be liable for the actions which resulted in the violation of Nader's civil rights. Because it was clear on their face that there was a shortcoming and failure, or at a minimum a shortcoming in ability to supervise their employees, this Court should deny the Sarpy County Defendants' Motion for Summary Judgment as to the count IV of Plaintiffs' complaint. Moreover, this issue is not at all related to the issues of immunity, and as a result pursuant to the Court's May 26, 2017, Order are premature.

## **ARGUMENT VI**

### THE DAMAGES ALLEGED BY MS. NADER, AS WELL AS BY MR. NADER DIRECTLY STEM FROM THE VIOLATION OF MR. NADER'S CIVIL RIGHTS, AND THE NECSSARY LAWS OF CONSORTIUM THAT FOLLOWS THEREIN.

As a general rule spouses are entitled to claim a loss of consortium when the personal rights or services and companionship of their spouse is denied as a result of a violation of civil rights. *Pahle v Colebrookdale Tp*, 227 F.Supp.2d 361 (E.D. Penn. 2002) *See also Folores v Cameron Cnty, Tex.*, 92 F.3d 258 (5th Cir. 1996); *Rhyne v. Henderson Cnty*, 973 F.2d 386 (5th Cir. 1992); *Crumpton v. Gates*, 947 F.2d 1418 (9th Cir. 1991). Likewise, it is well established under Nebraska law that spouses are entitled loss of consortium, the damages of which represent the compensation for the spouse who has been deprived of their rights to which they otherwise would have been entitled as a result of the marital relationship including, but not limited to, the assistance of the spouse. *Erickson v. U-Haul Intn'l*, 278 Neb., 767 N.W. 2nd 765 (2009).

In this case, Ms. Nader's claims stem from the fact that as a direct result of the violation of her husband's rights she ultimately was harmed because she was unable to take a change in assignment which would have marked a dramatic upgrade in her career, opening the door to further promotions, as well as for further pay increases. As a direct result of Mr. Nader being in jail, Ms. Nader was forced to have this position rescinded, which ultimately jeopardized her career, and has led to her decision to retire early from the Airforce, albeit she has not retired as of yet.

Because Ms. Nader has been harmed as a direct result of her husband's unconstitutional arrest and confinement, she is entitled to damages directly related to loss of consortium. It is undeniable that there is at a minimum a genuine dispute as to the

facts surrounding the validity of Mr. Nader's arrest, and consequently the Sarpy County Defendants are not entitled to Summary Judgment on the issues of absolute or qualified immunity, and as a result, this Court should deny the Sarpy County Defendants Motion for Summary Judgment, as to Ms. Nader's standing.

## CONCLUSION

For the reasons set forth above, including the fact that the Sarpy County Defendants are not entitled to absolute immunity, the Sarpy County Defendants are not entitled to qualified immunity, the Sarpy County Defendants conspired with the Papillion Defendants to violate Nader's civil rights, the Sarpy County Defendants and particularly Sarpy County failed to adequately train and supervise its employees, and the damages which directly impacted both Mr. Nader and Ms. Nader as a direct result of the Sarpy County Defendants actions, this Court should deny the Sarpy County Defendants Motion.

Dated this 28th day of September, 2017

WADITH STOCKINGER NADER AND
STACEY NICHOLE NADER, Plaintiffs

By: _____
Christopher J. Tjaden, #18413
Zachary Lutz-Priefert, #25902
GROSS & WELCH, P.C., L.L.O.
1500 Omaha Tower
2120 South 72nd Street
Omaha, NE  68124
(402) 392-1500
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Vincent Valentino, Ryan M. Kunhart.

*/s/ Christopher J. Tjaden*

_____
Christopher J. Tjaden

12913-1/6CN7925