IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| WADITH STOCKINGER NADER and STACEY NICHOLE NADER, | ) ) ) | Case No. 8:17-cv-83 |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| THE CITY OF PAPILLION; SARPY COUNTY; BRYAN SVAJGL; BENJAMIN IVERSEN; SCOTT A. LYONS; L. KENNETH POLIKOV; and JENNIFER MIRALLES, | ) ) ) ) ) ) | |
| Defendants. | ) | |

_____

**REPLY BRIEF IN SUPPORT OF SUMMARY JUDGMENT
BY DEFENDANTS SARPY COUNTY,
L. KENNETH POLIKOV, and JENNIFER HESSIG F/K/A JENNIFER MIRALLES**
_____

On September 28, 2017, Plaintiffs filed their brief in opposition to the Motion for Summary Judgment of the "County Defendants" (Sarpy County, Miralles, and Polikov). With this opposition brief, the Plaintiffs submitted additional evidence in the form of depositions that were taken of Defendants Svajgl and Iversen (the "Papillion Defendants"). As permitted by NECivR 7.1(c), the "County Defendants" submit this reply brief.

I.  THE PLAINTIFFS MISPERCEIVE THE EVIDENCE OF PROBABLE CAUSE TO ARREST OR PROSECUTE WADITH NADER AND THE DOCTRINE OF QUALIFIED IMMUNITY

The primary thrust of the Plaintiffs' questioning of Detective Ben Iversen and Detective Bryan Svajgl at their respective depositions seems to reveal a misunderstanding

1

of when probable cause to arrest a suspect exists. Plaintiffs contend that because Detective Iversen did not locate the pictures referenced in the Cyber Tips at the scene of Nader's residence while executing the search warrant, no probable cause to arrest Nader at the scene. By extension, Plaintiffs seem to contend that any statements made by Defendant Miralles as a Deputy County Attorney, by agreeing with Investigator Svajgl's assessment that probable cause to arrest existed for purposes of a criminal prosecution by the County Attorney's office, that this somehow subjects Miralles to suit. Nothing could be further from the truth.

Investigator Bryan Svajgl clearly articulated in his deposition that the purpose of his entry into the Nader's residence was to seize the electronics that were capable of downloading or holding downloaded files, so that they could be examined for child pornography, including those seven specific child pornographic images referenced in the previously received Microsoft Cyber Tips. Prior to obtaining and executing the search warrant, Investigator Svajgl had conducted other investigation to identify Wadith Nader as the suspect who was in possession of the illicit images somewhere in his residence. All Investigator Svajgl needed to establish probable cause was some additional corroboration from Nader that he was reasonably likely to have committed the suspected violation of state law, in order to arrest him at the scene. While the search warrant was being executed, Nader verbally admitted to Investigator Svajgl that it was his Envy laptop and his email that had been "locked" by Microsoft in December of 2014. Further, Nader admitted downloading massive amounts of adult pornography onto the devices in his home. Iverson observed folders on Nader's computer containing pornography that were too numerous to be reviewed individually on scene, and his search program at the scene flagged one image on the Envy laptop as possible child pornography, creating reasonable suspicion of knowing possession. Nader also stated at the scene that he was the only one to use that computer. It was that computer that was seized under the warrant, along with other electronic devices and storage devices.

Probable cause, or at least arguable probable cause, existed to arrest Nader irrespective of the fact that the specific Cyber Tip images were not found at the scene. *See*, State v. Schuller, 287 Neb. 500, 643 N.W. 2d 626 (2014) (defining "possession of

child pornography" on an electronic device as inclusive of trace digital evidence of it, even though "deleted"). Miralles advised Svajgl that a complete forensics exam would be performed later on such electronic devices after they were taken pursuant to the search warrant, and additional charges could be filed by the County Attorney's Office if all seven images were found among those electronic devices - in other words, she spoke about her considerations in selecting the criminal charges to be prosecuted. As it turned out, several portions of the further investigation post-arrest further corroborated the probable cause that existed at the scene while the search warrant was being executed.

The "pre-charging decision/probable cause to detain" determination by an attorney prosecutor falls within the realm of what is covered by absolute prosecutorial immunity, but at a minimum clearly falls within the ambit of qualified immunity. *See,* Buckley v. Fitzsimmons, 509 U.S. 259, 113 S.Ct. 2606 (1993) (acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or trial, and which occur in the course of the prosecutor's role as an advocate for the state, are entitled to absolute immunity). As noted in Defendants' opening Brief in Support of Summary Judgment, a prosecutor who provides legal advice to a law enforcement officer who is acting with in the scope of his duties as a law enforcement officer is categorically protected by the doctrine of qualified immunity. Parsons v. McCann, 138 F. Supp. 3d 1086, 1106 (D. Neb 2015).

Given that the Application for Search Warrant and affidavit in support of it spelled out the probable cause information available based on Detective Svajgl's investigation over a several months period, and the fact that a neutral, detached magistrate authorized the seizure of specific evidence likely in existence at the Nader residence, it is at best, difficult to discern exactly what complaint the Plaintiffs make regarding the "lack of probable cause to arrest." The same information that went into the search warrant application and affidavit is essentially the same information that went into the detention request, which again, a neutral detached magistrate authorized. An "on call" deputy county attorney who was advised of the same material that the magistrate considered in issuing the warrant, and later a detention order, would be in no different position than if the officer were sitting at the prosecutor's desk asking he or she if enough evidence existed for the prosecutor to file a criminal complaint against Nader. One would believe that all parties involved could

reasonably rely on those affidavits and judicial orders authorizing the search and seizure of evidence at the Nader residence, including the further detention of Plaintiff Wadith Nader after his arrest at his residence to support qualified immunity. See, Kuehl v Burtis, 173 F.3d 646, 650(8th Cir. 1999) (an officer need not conduct a mini-trial before making an arrest, *citing* Brodnicki v City of Omaha, 75 F.3d 1261,1264(8th Cir.).

Further, although the Plaintiffs make much of the fact that neither Detective Iversen nor Detective Svajgl found "illegal porn" at the scene, even though Nader admitted readily to viewing "adult porn" that had a "Barely Legal" file folder he categorized on his Envy laptop, he dismisses such evidence as being "legal porn". The Eighth Circuit Court of Appeals, in the recent case of U.S. v. Kelley, 861 F.3d 790 (8th Cir. 2017), in a prosecution under 18 U.S.C. § 2252 for receiving and possessing child pornography, held that there was "probative value" of federal agents' statements regarding the defendant's use of adult pornography that outweighed any potential for unfair prejudice, and that the statements that the defendant made admitting to looking at and downloading adult "role-playing" pornography, like "young teen" categories on "file sharing programs" did not violate Fed. R. Evid. 403. Here, the Defendants point out that such evidence, whether found at the scene, or later, would have created a submissible criminal case against Nader to a trier of fact, and clearly establish probable cause for the prosecution of Wadith Nader. The mere fact that some forensics technician would say he or she could "not testify it was knowingly done," begs the question of whether such testimony is without foundation, and merely speculative, as other relevant evidence can supply such answer.

Further, the recent Eighth Circuit case of Doe v. Olson, 691 Fed. Appx. 272 (8th Cir. 2017) (*unpublished*) was a §1983 case against law enforcement officers from North Dakota brought by a suspect arrested for possession of child pornography during an investigation of the internet transfer of child pornography to a specific IP address at a specific residence. Special agent Jesse Smith of the North Dakota Bureau of Criminal Investigations applied for a search warrant to search Doe's residence and to seize images and videos, stored in computers and related storage devices in what appeared to be a single-family home. Smith, accompanied by eight other officers, arrived at the residence to execute the search warrant, and once inside, learned there were as many as eleven

occupants, some of whom who were subletting parts of the residence. Not finding Doe on the premises, nor his computer, they then went to Doe's place of employment and spotted his car with a blue laptop bag on the front seat. After talking to Doe and being denied consent to search his vehicle, Smith applied for another search warrant supplementing his original affidavit with the results of the initial search of the residence, and the additional information gathered during the investigation. The magistrate issued a second search warrant for the vehicle and any computers or electronic devices located therein. No child pornography was located. Doe was not arrested or charged with any crime, but he lost his job and was forced to move out of his rented room at that residence.

In Doe, the Eighth Circuit agreed with District Court's decision to grant the officers qualified immunity for claims arising out of their participation in the searches, citing Messerschmidt v. Millender, *infra*, and concluding that Doe did not identify any false information in the warrant affidavit, and that it was not unreasonable for the officers to believe they had probable cause to search the residence or his vehicle as he had access to the residence's wireless internet, and that he carried a laptop computer in the blue bag matching the information provided to the authorities at the residence, and that was located in his vehicle.

In Messerschmidt v. Millender, 565 U.S. 535, 132 S.Ct. 1235 (2012), the United States Supreme Court reviewed a case wherein certain occupants of a residence were subjected to a nighttime search and seizure search warrant including an arrest warrant issued by a detached neutral magistrate. The occupants of the residence brought a §1983 suit against the officers. The Supreme Court noted that the prior appeal court had determined that certain aspects of the warrant were unconstitutionally overbroad because the affidavits submitted failed to establish probable cause that certain broad categories of firearms, firearm-related materials, and gang-related materials were contraband or evidence of a crime. Such appeals court had concluded that a reasonable officer would have been aware of the warrant's deficiency, and therefore denied qualified immunity to the officers. The United States Supreme Court reversed, and noted that qualified immunity would protect the officers under these circumstances:

[W]here the alleged Fourth Amendment violation involves a search and seizure

5

pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner, or as we have sometimes put it, in "objective good faith." (citation omitted).

Id. at 546.

The Court discussed the narrow exception to the issued warrant wherein any "reasonably competent officer" would realize that the warrant was defective on its face, or not supported by probable cause, *citing* Malley v. Briggs, 475 U.S. 335, 106 S.Ct.1092 (1986), and concluded that the warrants issued did not fit this very narrow exception relied upon by the Ninth Circuit. As Chief Justice Roberts noted in the majority opinion:

The question in this case is not whether the magistrate erred in believing there was sufficient probable cause to support the scope of the warrant issued. It is instead whether the magistrate so obviously erred that any reasonable officer would have recognized the error. The occasions on which this standard will be met may be rare, but so to are the circumstances in which it will be appropriate to impose personal liability on a lay officer in the face of judicial approval of his actions. Even if the warrant in this case were invalid, it was not so obviously lacking in probable cause that the officers can be considered "plainly incompetent" for concluding otherwise. (Citation omitted) The judgment of the Court of Appeals denying the officers qualified immunity must therefore be reversed.

Id. at 556.

Here, there is no evidence that either Lee Polikov or Jennifer Miralles were provided with a copy of the search warrant application, affidavit, or search warrant issued, nor the detention request affidavit, either before or after the arrest of Nader. All Ms. Miralles was informed of, was what detective Svajgl advised her had been done during his investigation, up to the point of his being in the Nader residence with a search warrant, and at what point he was in his investigation of Nader as the suspect of the possession of child pornography investigation he had been involved in. As noted in Kuehl v. Burtis, 173 F.3d 646, 650 (8th Cir.1999):

Probable cause exists when the totality of circumstances demonstrates that a prudent person would believe the arrestee has committed or was committing a crime. (citation omitted).

Detective Svajgl was simply running information by Defendant Miralles to see if she agreed that he "had enough" to arrest Nader and what criminal charges the County

6

Attorney's Office would elect to file as prosecutor in connection with this arrest. In this matter, the typical case office assignment was made to one of the county attorney deputies to review, and sign the county attorney subpoena for Century Link records, or to review the case for filing charges, and then it was passed on to another deputy county attorney for prosecution. Neither Polikov nor Miralles had any contact with this case during the application for the search warrant issuance, the warrantless detention affidavit and order, or the prosecution phase of the case. Nevertheless, there was more than sufficient evidence to submit this case to a trier of fact for decision on all seven counts of possession of child pornography. To claim otherwise is mere folly.

II. THERE IS NO GENUINE ISSUE OF MATERIAL FACT CREATED BY THE MISINFORMATION IN SVAJGL'S INTERNAL REPORT WHICH IS INADMISSIBLE AS EVIDENCE

Only when evidence is "controverted" or genuinely in dispute does it create a sufficient issue of material fact to preclude a properly supported summary judgment motion. Both a motion for summary judgment a resistance to such motion must be based on admissible evidence, and statements of fact or allegations that are not supported by any admissible evidence should be disregarded for purposes of a summary judgment motion. See Fed. R. Civ. P. 56, Brooks v. Tri-Systems, Inc., 425 F.3d 1109, 1111 (8th Cir. 2005).

Here, Plaintiffs rely on certain statements in Investigator Svajgl's internal law enforcement incident report that he submitted to his employing agency to contend that Jennifer Miralles acted outside the scope of her statutory legal authority to "order" the arrest of Wadith Nader and usurp a law enforcement investigative function, such that she should not be entitled to absolute or qualified immunity. The problem with Plaintiffs' argument is that in Svajgl's sworn testimony by both affidavit and deposition, he fully acknowledges that the statement in his report that is relied upon by Plaintiffs was inaccurately written by him, and did not actually occur as written in such report.

Furthermore, the Plaintiffs unfortunately misrepresent what Detective Svajgl actually wrote in his report. The specific section of Detective Svajgl's internal report that the Plaintiffs have pointed to in order to support the involvement of Jennifer Miralles reads as

follows:
> I had contact with Sarpy County Attorney Jennifer Miralles and briefed her on the circumstances revolving around this case. ***She agreed to take custody of Wadith Nader*** based on the previous confirmed photographs that were reported to be uploaded to Microsoft SkyDrive. Miralles advised that the County Attorney's Office would amend additional counts after the analysis of the digital evidence was complete if needed."

(Affd. Lutz-Priefert, Ex. B. Ex. 26, PAP000165).(Emphasis supplied).

Somehow, the Plaintiffs have twisted this sentence written by Svajgl, which report was never observed at any time by Miralles until after this lawsuit had commenced, to instead mean "she ordered Nader's arrest." That is simply false. Jennifer Miralles has offered her testimony by affidavit that the above particular statements in the Svajgl report relied upon by Plaintiffs are inaccurate and did not take place. It was neither her report written by her, nor did she even endorse it as accurate. It is inadmissible hearsay and therefore cannot be received as an admission by her. See, U.S. v. Horned Eagle, 214 F.Supp.2nd 1040, 1042 (U.S. D.Ct. South Dakota, 2002), *citing* U.S. v. Orellana-Blanca 294 F.3d 1143,1149 (9th Cir. 2002). Furthermore, even assuming one would take the above hearsay statement from the Svajgl report literally, Miralles never "took custody of Nader" at any time, and no evidence exists that she did. There is no "dispute" or " controversy" about these facts.

Svajgl's misstatement in his internal report about Miralles' actions or statements was not the cause of Nader's arrest, nor his detention, and was not a violation of Nader's constitutional rights. Rather, Nader's detention was ordered by a neutral detached magistrate after Detective Svajgl had arrested Nader at the scene and submitted an affidavit of probable cause for such a Detention Order to be issued. *See*, Mendoza v. United States Immigration and Customs Enforcement, 849 F.3d 408 (8th Cir. 2017) (finding arguable probable cause existed for detention on an immigrations detainer).

In order to overcome a qualified immunity assertion, a plaintiff must do more than offer his bare assertions, but must produce sufficient evidence to create a genuine issue of fact as to whether the individual defendant violated his clearly established right. Hedges v. Poletis, 177 F.3d 1071 (8th Cir. 1999); Carpenter v. Gage, 686 F.3d 644 (8th Cir. 2012).

Even as the non-moving party, to overcome a summary judgment motion, Plaintiff must still present evidence sufficiently supporting the disputed material facts such that a reasonable jury could return a verdict in his favor, and simply referencing the complaint, or alleging that a fact is otherwise than shown by evidence, is insufficient to show there is a genuine issue for trial. Meuir v. Greene County Jail Employees, 487 F.3d 1115, 1118-1119. Kountz ex. rel. Hitchcock Foundation v. Gaines, 536 F.3d 813, 818-819 (8th Cir. 2008); Pope v. ESA Services, Inc., 406 F.3d 1001, 1004 (8th Cir. 2005).

In this case, Plaintiffs rely on a report not even authored by anyone in the county attorney's office, and which has been testified to under oath as containing an inaccurate phrase regarding who could arrest or take custody of Mr. Nader based on those facts known only to Detective Svajgl, and otherwise relayed by him to the "on call" deputy county attorney. Svajgl's report does not present a triable controversy regarding Miralles's actions in discharge of her prosecutorial functions, which were done in good faith, and were not investigative in nature, such that they are entitled to the protection of absolute, or at least qualified immunity. Finally, Plaintiffs' opposition brief identifies no evidence to show that the County Attorney, L. Kenneth Polikov, took any action violative of their constitutional rights.

## CONCLUSION

Inasmuch as the opening brief by Defendants Sarpy County, Miralles and Polikov has already addressed the issues of the Conspiracy claim, and the Failure to Train Claim, nothing more needs to be added in this reply brief regarding those issues. The evidence submitted on behalf of the Defendants, including the recent depositions of detectives Svajgl and Iversen as submitted by the Plaintiffs merely confirm what these Defendants have said all along. More than sufficient probable cause existed for the Sarpy County Attorney's office to prosecute Wadith Nader for the seven counts of possession of child pornography, and more than sufficient probable cause existed for the "on call deputy county attorney" Miralles to verify with Detective Svajgl that he had sufficient reasonable cause to arrest Nader for the initiation of a prosecution by the Sarpy County Attorney's

Office on a criminal charge of possession of child pornography, pending a further complete forensics analysis of the computers and hard drives seized at Nader's residence, which quickly resulted in an objective judicial determination of probable cause to continue such detention.

The undersigned defendants are entitled to absolute immunity on all §1983 claims; state sovereign immunity under Neb. Rev. Stat. §13-910(7); and, at least, qualified immunity on the "police advisory" claim.

Dated this 3rd day of October, 2017.

>Respectfully submitted,
>
>SARPY COUNTY, JENNIFER HESSIG (F/K/A MIRALLES), AND L. KENNETH POLIKOV, Defendants.
>
>BY: s/ Vincent Valentino
>Vincent Valentino, #14288
>Nebraska Telephone Building
>130 South 13th Street
>Suite 300
>Lincoln, NE 68508
>(402) 742-9240
>vince@nrmainc.info

### CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and thereby electronically served copies the same upon all counsel for the parties to this action: Christopher J. Tjaden, Zachary W. Lutz-Priefert, Ryan M. Kunhart, and Jeffrey J. Blumel.

>BY: s/ Vincent Valentino
>Vincent Valentino, #14288