IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| WADITH STOCKINGER NADER and STACEY NICHOLE NADER, | ) ) ) | Case No. 8:17-cv-00083 |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| THE CITY OF PAPILLION; SARPY COUNTY; BRYAN SVAJGL; BENJAMIN IVERSEN; SCOTT A. LYONS; L. KENNETH POLIKOV; and JENNIFER MIRALLES, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

BRIEF IN SUPPORT
OF MOTION FOR
<u>SUMMARY JUDGMENT</u>

Prepared and submitted by:

Ryan M. Kunhart, #24692
Jeffrey J. Blumel, #19011
Dvorak Law Group, LLC
13625 California Street, Suite 110
Omaha, Nebraska 68154
Attorneys for Defendants The City of Papillion,
Bryan Svajgl, Benjamin Iversen and Scott A. Lyons
rkunhart@ddlawgroup.com
jblumel@ddlawgroup.com
Telephone: 402-934-4770

## INTRODUCTION

Wadith Nader ("Mr. Nader") and his wife, Stacey Nader ("Ms. Nader") (sometimes Mr. Nader and Ms. Nader are collectively referred to as the "Naders"), sued the City of Papillion, Nebraska ("Papillion"), Papillion Detective Bryan Svajgl ("Detective Svajgl"), Papillion Police Chief Scott Lyons ("Chief Lyons"), City of La Vista, Nebraska Detective Benjamin Iversen ("Detective Iversen")[1] and the County of Sarpy ("Sarpy County") and its County Attorney Kenneth Polikov ("Polikov") and Deputy County Attorney Jennifer Miralles ("Miralles") alleging four claims under 42 U.S.C. § 1983.

The Naders' four claims under 42 U.S.C. §1983 allege: (1) a Fourth Amendment violation for an unlawful seizure and a violation of Mr. Nader's Fourth Amendment right not to be unlawfully confined without proper or legal cause; (2) malicious prosecution; (3) a conspiracy by all Defendants to violate Mr. Nader's Fourth, Fifth and Fourteenth Amendment rights; and (4) that such violation of Nader's constitutional rights was caused by Papillion and Sarpy County through their respective policies, practices and customs.  As set forth below, the Municipal Defendants are entitled to summary judgment on all of these claims.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to NE.CivR 56.1(a), the Municipal Defendants incorporate herein the Undisputed Material Facts and evidence contained in the Sarpy Defendants' Brief and Exhibits in Support of Summary Judgment (Filing No. 40 through Filing No. 40-19).

Additionally, the Municipal Defendants set forth the following undisputed material facts in support of their Motion for Summary Judgment:

---

[1] Papillion, Svajgl, Lyons and Iversen are sometimes referred to herein as the "Municipal Defendants", and Sarpy County, Polikov and Miralles are sometimes referred to herein as the "Sarpy Defendants".

1.      On December 22, 2014, Detective Svajgl was assigned to conduct follow-up on a possible possession of child pornography report stemming from the two CyberTips generated by Microsoft. With the assistance of Detective Stigge #469, Detective Svajgl examined the image files uploaded on December 3, 2014 to Microsoft Skydrive from the email address wadith@hotmail.com, as reported by Microsoft in CyberTip 3184694.  (Affidavit of Bryan S. Svajgl, August 15, 2017 ("Svajgl Affidavit") ¶ 5).

2.      Below is a description of the image files uploaded on December 3, 2014 to Microsoft Skydrive from the email address wadith@hotmail.com, as reported by Microsoft in CyberTip 3184694:

a.      Image file named "1773334201.jpg" depicts an apparent juvenile female (presumably between the ages of 12 and 14). The female depicted is sleeping with her vagina exposed. Child Victim Identification Program (CVIP) reported the file appears to contain a child victim who has been identified by law enforcement as the "Blue Pillow" Series. (CVIP report #84278).  (Svajgl Affidavit ¶ 5(a)).

b.      Image file named "1850260232.jpg" depicts the same apparent juvenile female with her vagina and anus exposed. Child Victim Identification Program (CVIP) reported the file appears to contain a child victim who has been identified by law enforcement as the "Blue Pillow" Series. (CVIP report #84278).  (Svajgl Affidavit ¶ 5(b)).

3.      On January 20, 2015, with the assistance of Detective Stigge, Detective Svajgl examined the additional image files uploaded on December 3, 2014 to Microsoft Skydrive from the email address wadith@hotmail.com, as reported by Microsoft in CyberTip 3320099.  (Svajgl Affidavit ¶ 6).

4.      Below is a description of the image files uploaded on December 3, 2014 to Microsoft Skydrive from the email address wadith@hotmail.com, as reported by Microsoft in CyberTip 3320099:

a.      Image file named "1600471024.jpg" depicts a prepubescent white female wearing no pants or underwear. She is laying on the bed with her legs tied together and her vagina exposed. The female appears to be sleeping or unconscious. The female appears to be approximately 8 to 10 years of age. Child Victim Identification Program (CVIP) reported the file appears to contain a child victim who has been identified by law enforcement as the "Colorful Bedroom" Series (CVIP report #84653).  (Svajgl Affidavit ¶ 6(a)).

b.      Image filed named "409277812.jpg" depicts a fully nude white female approximately 12-14 years of age. She is sitting down with her legs off to her side and a portrait backdrop behind her.  (Svajgl Affidavit ¶ 6(b)).

c.      Image file named "829555945.jpg" depicts a fully nude white female approximately 13-15 years of age. She is sitting on a rock by a body of water with her vagina exposed.  (Svajgl Affidavit ¶ 6(c)).

d.      Image file named "1766201396.jpg" depicts a fully nude white female approximately 15-17 years of age. She is wearing no pants or underwear with her vagina exposed.  (Svajgl Affidavit ¶ 6(d)).

e.      Image file named "864858517.jpg" depicts a fully nude white female approximately 14-16 years of age. She is wearing no pants or underwear with her vagina exposed.  (Svajgl Affidavit ¶ 6(e)).

5.      After viewing the seven images reported by Microsoft CyberTips 3184694 and 3320099, Detective Svajgl made the determination, based on his knowledge, experience, and training, that the seven images that were uploaded from the email address wadith@hotmail.com likely constituted the visual depiction of sexually explicit conduct or erotic nudity, which has a child as one of its participants or portrayed observers, the possession of which is in violation of the laws of the State of Nebraska. (Svajgl Affidavit ¶ 7).

6.      While executing the search warrant, Detective Svajgl spoke with Mr. Nader and Mr. Nader confirmed that his email address had been wadith@hotmail.com, that he had moved some images to the Microsoft SkyDrive, and that's likely how his wadith@hotmail.com email was locked from Microsoft.  (Deposition of Bryan S. Svajgl, September 14, 2017 ("Svajgl Deposition") 92:17-93:9; 94:18-23).

7.      Based on Mr. Nader confirming during the execution of the search warrant that he had moved some images to the Microsoft SkyDrive, and Detective Svajgl already having viewed the child pornography images uploaded from Mr. Nader's email to Mr. Nader's Microsoft SkyDrive, Detective Svajgl believed this evidence supported Mr. Nader's having knowingly possessed child pornography.  (Svajgl Deposition 104:3-9; Deposition of Wadith Nader, July 10, 2017 ("Mr. Nader Deposition") 47:8-24; 65:1-7; 90:2-21; 156:6-16).

8.      While executing the search warrant, Mr. Nader also confirmed that his main computer was the HP Envy laptop on which the suspected and confirmed child pornography was located.  (Svajgl Affidavit ¶ 35; Svajgl Deposition 93:20-94:8; 94:23-25).

9.     While executing the search warrant at Mr. Nader's residence on March 17, 2015, Detective Iversen located one hash value of suspected child pornography twice on Mr. Nader's HP Envy laptop.  (Deposition of Benjamin Iversen, September 8, 2017 ("Iversen Deposition") 73:23; 76:2-11).

10.     While executing the search warrant, Detective Iversen also located twenty-three keyword hits, which are words that are defined as related to child pornography, on Mr. Nader's laptop.  (Iversen Deposition 9:13-15; 110:25).

11.     Detective Iversen does not recall speaking with Mr. Nader while executing the search warrant on March 17, 2017.  If he spoke with Mr. Nader, it was just in passing.  (Iversen Deposition 104:11-13).

12.     Mr. Nader confirmed he did not have any discussions with Detective Iversen.  (Mr. Nader Deposition 132:3-5).

13.     On March 17, 2017, Detective Iversen left Mr. Nader's residence before Mr. Nader was removed from the premises.  (Iversen Deposition 128:19-21).

14.     On March 17, 2017, no one asked Detective Iversen's advice as to whether or not he believed there was probable cause to arrest Mr. Nader.  (Iversen Deposition 133:23-134:1).

15.     Chief Lyons became the Chief of Police for the City of Papillion, Nebraska on March 2, 2015.  (Affidavit of Scott A. Lyons, October 2, 2017 ("Lyons Affidavit") ¶ 4).

16.     Chief Lyons was not directly involved with the investigation of Mr. Nader, nor was he present at Mr. Nader's residence on March 17, 2015 when the Papillion Police Department was executing a search warrant relating to the possession of suspected child pornography.  (Lyons Affidavit ¶¶ 9-10).

6

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper if there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  In determining whether summary judgment should be granted, the court must view the evidence and the inferences to be drawn therefrom in the light most favorable to the nonmoving party.  Enterprise Bank v. Magna Bank of Missouri, 92 F.3d 743, 747 (8th Cir. 1996).

The party moving for summary judgment initially bears the responsibility to identify the portions of the pleadings, depositions, answers to discovery, together with affidavits, if any, which it believes demonstrates the absence of any genuine issues of material fact. Celotex Corp., 477 U.S. at 322-23. In response, the nonmoving party may not rest upon mere allegations or denials but has the burden to set forth specific facts showing that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). A genuine issue of material fact is more than "some metaphysical doubt as to the material facts." Id. at 586.  Further, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2509-10, 89 L. Ed. 2d 202 (1986).

Finally, summary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are

designed to secure the just, speedy and inexpensive determination of every action. Celotex Corp., 477 U.S. at 327.

## ARGUMENT

## I.

## DETECITVE SVAJGL, DETECTIVE IVERSEN AND CHIEF LYONS ARE ENTITLED TO QUALIFIED IMMUNITY.

The doctrine of qualified immunity generally protects government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Smith v. City of Minneapolis, 754 F.3d 541, 545 (8th Cir. 2014) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)); see also White v. Pauly, 137 S. Ct. 548, 551, 196 L. Ed. 2d 463 (2017). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officers from harassment, distraction, and liability when they perform their duties reasonably." Thompson v. Shock, 852 F.3d 786, 790 (8th Cir. 2017) (quoting Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)).

As recently reiterated by the United States Supreme Court, qualified immunity is an important doctrine to be upheld by courts and it is a "longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" White v. Pauly, 137 S. Ct. 548, 552, 196 L. Ed. 2d 463 (2017) (citation omitted). Rather, the analysis of what constitutes clearly established law should be tailored to the facts of each case; otherwise "[p]laintiffs would be able to convert the rule of qualified immunity…into a rule of virtually unqualified liability simply by alleging violation of

extremely abstract rights." Id. (quoting Anderson v. Creighton, 483 U.S. 635, 639, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)).

Qualified immunity is not just a defense to liability, but provides immunity from suit. Robbins v. Becker, 715 F.3d 691, 694 (8th Cir. 2013) (citing Hunter v. Bryant, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991)). The standard of qualified immunity is intended to provide a wide berth of protection for mistaken judgments, such that it will "protect all but the plainly incompetent or those who knowingly violate the law." Ulrich v. Pope Cty., 715 F.3d 1054, 1059 (8th Cir. 2013) (quoting Hunter, 502 U.S. at 229). An official is entitled to qualified immunity against a §1983 action unless "(1) the facts alleged, taken in the light most favorable to the injured party, show that the officer's conduct violated a constitutional right; and (2) the constitutional right was clearly established at the time of the deprivation so that a reasonable officer would understand his conduct was unlawful." Ingrassia v. Schafer, 825 F.3d 891, 896 (8th Cir. 2016) (citing Pearson, 555 U.S. at 231). "If either question is answered in the negative, the public official is entitled to qualified immunity." Hall v. Ramsey Cnty., 801 F.3d 912, 917 (8th Cir. 2015) (quoting Vaughn v. Ruoff, 253 F.3d 1124, 1128 (8th Cir. 2001)). The Court may address the questions in either order. Ingrassia, 825 U.S. at 896. Here both questions are answered in the negative.

While the defendant raising the affirmative defense of qualified immunity has the burden of proof, it is the plaintiff who must demonstrate that the law was "clearly established." Smith v. City of Minneapolis, 754 F.3d 541, 546 (8th Cir. 2014) (citing Monroe v. Ark. State Univ., 495 F.3d 591, 594 (8th Cir. 2007)). In other words, "to avoid pretrial dismissal, a plaintiff must present facts showing the violation of a constitutional

right that was clearly established at the time of the defendant's act." De La Rosa v. White, 852 F.3d 740, 743 (8th Cir. 2017) (citing Pearson, 555 U.S. at 232-33, 236).

The Fourth Amendment's protection of freedom from unreasonable searches and seizures encompasses the right to not be arrested without probable cause. Williams v. City of Alexander, 772 F.3d 1307, 1313 (8th Cir. 2014).  The Fourth Amendment's prohibition against unreasonable seizures is not violated where evidence establishes the existence of probable cause to arrest a suspect.  Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317 (1983).  A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause.  Borgman v. Kedley, 646 F.3d 518, 522-23 (8th Cir. 2011).  Although a warrantless arrest without probable cause violates the Fourth Amendment, a claim of qualified immunity from liability for such an arrest requires two more particularized inquiries: (1) whether, accepting the facts in the light most favorable to the plaintiff, an arrest based on particular circumstances did in fact lack probable cause, thereby stating a Fourth Amendment violation; and (2) if so, it is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Mitchell v. Shearrer, 729 F.3d 1070, 1076 (8th Cir. 2013) (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). If "a reasonable officer *could have believed* [the] arrest to be lawful, in light of clearly established law and the information the arresting officer possessed," then he is entitled to qualified immunity. New v. Denver, 787 F.3d 895, 899 (8th Cir. 2015) (quoting Hunter, 502 U.S. at 227).

A.    Detective Svajgl Had Probable Cause to Arrest Mr. Nader.

As an initial matter, the evidence submitted in support of the Municipal Defendant's Motion for Summary Judgment establishes that neither Detective Iversen, nor Chief Lyons had the personal involvement necessary in Mr. Nader's arrest or subsequent confinement necessary to establish potential liability under 42 U.S.C. § 1983.  Detective Iversen does not recall speaking with Mr. Nader while executing the search warrant on March 17, 2017.  (Iversen Deposition 104:11-13).  Mr. Nader confirmed he never had any discussions with Detective Iversen.  (Mr. Nader Deposition 132:3-5).  On March 17, 2017, Detective Iversen left Mr. Nader's residence before Mr. Nader was removed from the premises.  (Iversen Deposition 128:19-21).  No one asked Detective Iversen's advice as to whether or not he believed there was probable cause to arrest Mr. Nader.  (Iversen Deposition 133:23-134:1).  Chief Lyons was not directly involved in the investigation of Mr. Nader leading up to his arrest on March 17, 2015, nor was he present at Mr. Nader's residence on March 17, 2015 when the Papillion Police Department was executing a search warrant relating to the possession of suspected child pornography.  (Lyons Affidavit ¶¶ 9-10).

To the extent Detective Iversen and Chief Lyons had sufficient personal involvement to establish potential liability under 42 U.S.C. § 1983, all claims against them are subject to dismissal for the reasons set forth below.

Probable cause exists "when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." Gilmore v. City of Minneapolis, 837 F.3d 827, 832 (8th Cir. 2016) (quoting Borgman v. Kedley, 646 F.3d 518, 523 (8th Cir. 2011)). The "reasonable person" criteria incorporated into the probable cause standard is designed

to allow a degree of "reasonable mistakes" in making an arrest. <u>Greenman v. Jessen</u>, 787 F.3d 882, 888 (8th Cir. 2015).

Here, it is clear Detective Svajgl possessed probable cause to arrest Mr. Nader. In December 2014, Detective Svajgl received two CyberTips from NCMEC. Within the CyberTips, Microsoft reported that its customer with the email address wadith@hotmail.com uploaded to Microsoft Skydrive three images reported as child pornography and five images suspected to be child pornography. (Svajgl Affidavit ¶¶ 3-4). The Nebraska State Patrol verified that the email address wadith@hotmail.com belonged to Wadith S. Nader of 912 Hickory Hill Road, Papillion, Nebraska. (Svajgl Affidavit ¶ 8).

After receiving the CyberTips, Detective Svajgl personally examined the seven images. Three of the seven images had been reported by CVIP as confirmed child pornography. (Svajgl Affidavit ¶ 5). Based on his training and experience, Detective Svajgl determined that all seven images likely constituted child pornography, the possession of which violated the laws of Nebraska. (Svajgl Affidavit ¶ 7).

Microsoft provided an IP address, which was verified as belonging to CenturyLink. (Svajgl Affidavit ¶ 8). Detective Svajgl served CenturyLink with a Sarpy County Attorney subpoena requesting records and information relating to the identification of its subscriber using such IP address on December 3, 2014 at 1822 and 1830 hours, the times the seven images were uploaded to the Microsoft Skydrive from wadith@hotmail.com, and CenturyLink confirmed that this IP address belonged to Mr. Nader at 912 Hickory Hill Road, Papillion, Nebraska on December 3, 2014. (Svajgl Affidavit ¶¶ 9, 12, 14). Detective Svajgl also conducted further investigation to confirm

Mr. Nader resided at 912 Hickory Hill Road, Papillion, Nebraska.  (Svajgl Affidavit ¶¶ 10, 12).

Based on his investigation, knowledge, training and experience, Detective Svajgl submitted a Search Warrant Application and obtained a valid Search Warrant from the Honorable Judge Hutton of the Sarpy County Court with the probable cause to believe that Mr. Nader's premises was being used for the possession and distribution of child pornography.  (Svajgl Affidavit ¶¶ 17-23).

On March 17, 2017, Detective Svajgl, Detective Iversen, and other Papillion and La Vista law enforcement officers executed the search warrant.  (Svajgl Affidavit ¶ 24). While executing the search warrant, Detective Svajgl spoke with Mr. Nader, and Mr. Nader confirmed that his email had been wadith@hotmail.com, that he had moved some images to the Microsoft Skydrive, and that is likely how his wadith@hotmail.com email was locked from Microsoft.  (Svajgl Deposition 92:17-93:9; 94:18-23; Mr. Nader Deposition 47:8-24; 65:1-7; 90:2-21; 156:6-16).  Mr. Nader also confirmed to Detective Svajgl that his main computer was the HP Envy laptop on which the suspected and confirmed child pornography was located. (Svajgl Affidavit ¶ 35; Svajgl Deposition 93:20-94:8; 94:23-25).

During the search, Detective Iversen examined Mr. Nader's HP Envy laptop found in the kitchen and located several large files of pornography, which were categorized by pornography.  (Svajgl Affidavit ¶ 35).  While scanning the HP Envy laptop, Detective Iversen discovered one image was flagged as possible known child pornography.  (Svajgl Affidavit ¶ 35).  No one asked Detective Iversen's advice as to

whether or not he believed there was probable cause to arrest Mr. Nader. (Iversen Deposition 133:23-134:1).

While at Mr. Nader's house, Detective Svajgl contacted Miralles, the on-call Sarpy County Attorney, and explained the circumstances of the case and that he believed he had probable cause to believe Mr. Nader had committed a crime based on the evidence gathered in his investigation and the execution of the search warrant. (Svajgl Affidavit ¶¶ 38-39). Miralles agreed. (Svajgl Affidavit ¶39).

Mr. Nader was then arrested on scene based on the three child pornography images previously confirmed by CVIP. (Svajgl Affidavit ¶ 41). Later that day, Detective Svajgl submitted an Affidavit of Probable Cause for Warrantless Arrest for Mr. Nader's arrest, and the reviewing Judge signed a Probable Cause Detention Order on March 18, 2015. (Svajgl Affidavit ¶ 43-47, Affidavit of Vincent Valentino, Exhibit A (Filing No. 40-16).

The fact that Mr. Nader was not convicted of the crime of possessing child pornography is irrelevant to this Court's probable cause analysis. This Court, as well as the United States Supreme Court, has recognized that even the acquittal of an individual suspected of committing a crime is irrelevant to the validity of the arrest. Brodnicki v. City of Omaha, 874 F. Supp. 1006 (D. Neb. 1995), aff'd, 75 F.3d 1261 (8th Cir. 1996) (citing Michigan v. DelFillippo, 443 U.S. 31, 36, 61 L. Ed. 2d 343, 99 S. Ct. 2627 (1979)). The same holds true when criminal charges against an individual are dropped. "The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released." Baker v. McCollan, 443 U.S. 137, 145, 99 S. Ct. 2689 (1979);

14

See also Denver, 787 F.3d at 900. The mere fact that the charges against Mr. Nader were ultimately dropped because Sarpy County Prosecutor Benjamin Pearlman determined, in his best legal judgment, that Mr. Nader's defense of an "accidental download" of seven child pornography images does not indicate insufficient cause to make an arrest. (See Filing No. 40-6 ¶ 7)

Further, as set forth in the Sarpy Defendants' brief, State v. Schuller, 287 Neb. 500, 643 N.W. 2d 626 (2014) and U.S. v. Hyer, 498 Fed. Appx. 658 (8th Cir. 2013), (not selected for permanent publication), and the cases cited therein, establish that more than sufficient evidence existed for the issuance of the search warrant for Mr. Nader's residence, Mr. Nader's warrantless arrest based on probable cause that he had committed a felony, Mr. Nader's detention order, and the subsequent criminal charges filed against Mr. Nader for child pornography possession.

Additionally, the facts known to Detective Svajgl at the time he arrested Mr. Nader are essentially analogous to the facts the investigative agent possessed in United States v. Ruiz, 2014 U.S. Dist. LEXIS 184393, 2014 WL 10183873 (W.D. Tex. Aug. 25, 2014). In Ruiz, the Defendant asserted that statements he made in an encounter with law enforcement agents on April 11, 2014 should be suppressed because he was impermissibly detained in violation of the Fourth Amendment. At the Defendant's suppression hearing, Homeland Security Investigations Agent Garrett Olsen ("Olsen") testified regarding his investigation of the pending charges against the Defendant for receiving and distributing material involving sexual exploitation of minors in violation of 18 U.S.C. § 2252(a)(2) (the "Federal Child Pornography Statute").

Olsen testified that he utilized a law enforcement database which locates IP addresses associated with downloading or sharing child pornography files. The database provided Olsen with an IP address in El Paso, Texas, and upon receiving the IP address, Olsen obtained, via summons from Time Warner, the name of the individual renting or subscribing the IP address from Time Warner. The information revealed that the Defendant was the subscriber to the IP address during the time period when files associated with child pornography were downloaded or shared. Time Warner also notified Olsen that the internet service had been cancelled, but Olsen obtained information from Time Warner indicating the Defendant had a new account and IP address at a new address in El Paso, Texas. Ruiz at 2-3.

Olsen testified that the new IP address was also associated with downloading and sharing child pornography. He further stated that each child pornography file that is downloaded is associated with a hash ID, a unique serial number specific to the file, and that all known instances of child pornography files are cataloged into a large database available to law enforcement that contains all known instances of child pornography. Olsen testified that he selected three of the hash IDs downloaded by the Defendant's new IP address, viewed the files, and verified that the files were child pornography. Olsen also testified that a globally unique identifier ("GUID") associated with a computer at the Defendant's residence was responsible for downloading or sharing child pornography. Id. at 4.

Olsen's investigation and surveillance into the Defendant also revealed that two other individuals resided with the Defendant. On April 8, 2014, Olsen obtained a search warrant to search the Defendant's residence, and the search warrant was executed on

16

April 11, 2014. Olsen testified that agents were concerned that the Defendant and one of his roommates had access to firearms and decided to wait for the Defendant to leave the residence before executing the search warrant to minimize any risk to the agents. After the Defendant left the residence in one of his roommate's vehicles, agents stopped the vehicle, obtained keys to his residence from the Defendant, and proceeded with executing the search warrant. Id. at 8.

Among other issues raised at the Defendant's suppression hearing, the Defendant argued that Olsen lacked probable cause to arrest the Defendant at the time that he stopped his roommate's vehicle, therefore his detention violated the Fourth Amendment, and his later confession was subject to suppression.

In analyzing whether Olsen had probable cause to arrest the Defendant, the Court found that "the facts known to Olsen prior to executing the search warrant were sufficient to warrant a reasonable person to believe that Defendant had violated [the Federal Child Pornography Statute]." Id. at 15. In reaching this conclusion, the Court noted that Olsen had learned that two separate IP addresses linked to the Defendant were involved in the downloading or sharing of child pornography. Further, through surveillance, Olsen was able to verify that the Defendant was a resident of one of the addresses linked to downloading and sharing child pornography. The Court also discussed Olsen's ability to link the GUID to the Defendant. Id. at 16-17.

The Court also credited Olsen's testimony regarding the hash IDs downloaded by the Defendant's IP address matched the hash IDs of known images of child pornography, and the fact that Olsen viewed three of the images and verified those images were child pornography. Id. at 18.

17

Based on the above facts, the Court concluded that the facts within Olsen's knowledge were sufficient to warrant a reasonable person to believe that Defendant had committed the elements of the Federal Child Pornography Statute. Id. at 18.

In support of his motion to suppress, the Defendant argued that "law enforcement agents had a 'wealth of information' about an IP address linked to Defendant that was associated with downloading child pornography, but agents did not obtain an arrest warrant despite knowing this information." Id. at 18-19. The Defendant further argued that the failure to obtain an arrest warrant indicated that the agents did not have probable cause to arrest him.

In rejecting the Defendant's argument, the Ruiz Court noted United States Supreme Court precedent, which makes it clear that "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action" does not invalidate the Defendant's arrest. Id. at 19. See also Devenpeck v. Alford, 543 U.S. 146, 153 (2004), Scott v. United States, 436 U.S. 128, 138, 56 L. Ed. 2d 168, 98 S. Ct. 1717 (1978). The Ruiz Court went on to state that the proper inquiry is "whether the circumstances, viewed objectively, justify Defendant's arrest." Id. at 19. The Ruiz Court concluded that Olsen had probable cause to arrest the Defendant at the time Olsen and other agents stopped the Defendant's vehicle, and therefore the Defendant's later confession was not subject to suppression. Id. at 19-20.

B.    At a minimum Detective Svajgl Had Arguable Probable Cause to Arrest Mr. Nader.

Even if Detective Svajgl lacked probable cause, it was objectively reasonable for him to believe probable cause existed at the time of Mr. Nader's arrest, and therefore arguable probable cause existed. While "a law enforcement officer has probable cause 'when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense,'" the inquiry does not stop there for immunity purposes. Gilmore, 837 F.3d at 832 (quoting Borgman v. Kedley, 646 F.3d 518, 523 (8th Cir. 2011)). An officer will be entitled to qualified immunity, irrespective of the existence of *actual* probable cause, if it can be said that his belief that probable cause did in fact exist was "objectively reasonable." Id. Therefore, in analyzing the applicability of qualified immunity, the Court must determine if there was "arguable probable cause" to make the arrest. Baribeau v. City of Minneapolis, 596 F.3d 465 (8th Cir. 2010).

In Tuskan v. Jackson County, 134 F. Supp. 3d 1041, (S.D. Miss. 2015), among other claims, the Plaintiff alleged a Fourth Amendment false arrest claim.  In Tuskan, Defendant Hope Thornton ("Thornton"), a detective with the Jackson County, Mississippi Sheriff's Office, received information from the Children Protection System advising that a certain IP address had downloaded what appeared to be child pornography.  Thornton surveilled the IP address and obtained additional evidence of similar downloads.  He sent a subpoena to Cable One, Inc., the internet service provider related to the IP address, and Cable One produced information that the IP address was assigned to the Plaintiff, Ronald Tuskan ("Tuskan").  Id. at 1044.  Thornton obtained search warrants for Tuskan's home and place of employment.  Thornton made contact with Tuskan at his place of employment and conveyed to Tuskan that child

pornography had been downloaded using his IP address. Tuskan denied having any knowledge of child pornography. Id.

In rejecting Tuskan's Fourth Amendment false arrest claim and finding that Thornton had established arguable probable cause, the Court stated that:

> "Thornton arguably had probable cause to do so based on the evidence she had at the time that child pornography had been downloaded at Tuskan's IP address. By the time the purported arrest was made, Thornton had obtained information indicating that IP address 174.126.136.2 had downloaded what constituted child pornography. Investigator's Report 1 [60-1]. Pursuant to a grand jury subpoena she served upon Cable One, Thornton had received information that IP address 174.126.136.2 was assigned to Tuskan. [**18] Id. at 3 [60-1]. Nevertheless, when Thornton made contact with Tuskan, Tuskan denied that he was involved with the download of child pornography using his IP address. Tuskan Dep. 15:3-10 [60-7].

> Under such circumstances, the Court finds that the totality of facts and circumstances known to Thornton at the time of the alleged arrest of Tuskan were sufficient to establish arguable probable cause **notwithstanding the fact that it was later discovered that Tuskan's personal computer did not have evidence of child pornography on the computer.** See, e.g., Mesa v. Prejean, 543 F.3d 264, 269 (5th Cir. 2008) ("A mistake reasonably made as to probable cause justifies qualified immunity."). Because reasonable officers could disagree on whether [**19] probable cause existed to arrest, Thornton is entitled to qualified immunity. Id. at 1050." (Emphasis added).

Unlike Thornton, the evidence in the present case establishes that Mr. Nader actually possessed known child pornography on his computer at the time Detective Svajgl arrested him. (Svajgl Affidavit ¶¶ 5-6; Affidavit of Shelby Mertins, August 3, 2017, Exhibit "A", Exhibit "B", and Exhibit "C" (Filing No. 40-8; 40-9; 40-10; 40-11, pp. 5-6). Based on this and facts set forth above, it is clear that Detective Svajgl at a minimum had arguable probable cause to arrest Mr. Nader and he is entitled to qualified immunity.

20

## II.

## A MALICIOUS PROSECUTION CLAIM UNDER SECTION 1983 IS NOT A "CLEARLY ESTABLISHED RIGHT" WITHIN THE EIGHTH CIRCUIT.

42 U.S.C. § 1983 provides a cause of action for "any citizen of the United States or other person within the jurisdiction thereof…depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws." In such cases, government officials are protected from liability under qualified immunity "unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." Morris v. Zefferi, 601 F.3d 805, 809 (8th Cir. 2010). In Count II, the Naders allege malicious prosecution, arguing that "no reasonable police officer in a similar situation would have made the same decisions made by Officers Svajgl and Iversen in this case." (Filing No. 27 ¶ 63).

In the Eighth Circuit, "malicious prosecution by itself is not punishable under Section 1983 because it does not allege a constitutional injury." Kurtz v. Shrewsbury, 245 F.3d 753 (8th Cir. 2001); Tech. Ordnance v. United States, 244 F.3d 641 (8th Cir. 2001). In Harrington v. City of Council Bluffs, the Eighth Circuit noted that "if malicious prosecution is a constitutional violation at all, it probably arises under the Fourth Amendment." 678 F.3d 676 (8th Cir. 2012) (citing Albright v. Oliver, 510 U.S. 266, 271, 275, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994) (plurality opinion). The Eighth Circuit again declined to decide the issue as recently as 2014. See Bates v. Hadden, 576 Fed. Appx. 636, 639 (8th Cir. 2014). In Sampson v. Kofoed, No. 8:07CV155, 2016 U.S. Dist. LEXIS 186573, *52 (D. Neb. Mar. 30, 2016), Your Honor noted the circuit split on the recognition of malicious prosecution claims under § 1983, but concluded that "[t]his

court considers malicious prosecution a theory of recovery that requires underlying constitutional deprivations or injuries to amount to a § 1983 claim.  Without an underlying constitutional deprivation, the court would agree with the garnishee, there would be no § 1983 claim." Id.

For the reasons set forth in this brief, there has not been any underlying constitutional deprivation.  Therefore, the Naders' malicious prosecution claim fails.

Even assuming a Fourth Amendment right against malicious prosecution exists, given the Eighth Circuit precedent cited above, such a right was not clearly established at the time of Mr. Nader's arrest and prosecution.  Given this, employing the analysis from Harrington, reasonable officers, in the position of Detective Svajgl at the time of Mr. Nader's arrest, could not have known that malicious prosecution violated Mr. Nader's Fourth Amendment rights.  Therefore, Detective Svajgl is entitled to qualified immunity on the Naders' malicious prosecution claim.

To the extent the Naders assert a tort claim of malicious prosecution, the claim is exclusively governed by the Nebraska Political Subdivisions Tort Claims Act, Neb. Rev. Stat. § 13-901, et seq.  As set forth on page seventeen of the Sarpy Defendants' Brief in Support of Summary Judgment, Neb. Rev. Stat. § 13-910(7) retains sovereign immunity for the Municipal Defendants with respect to claims of malicious prosecution, and the Municipal Defendants are entitled to summary judgment on such claim.

**III.**

**THERE ARE NO REMAINING UNDERLYING CLAIMS.**
**THE NADERS' CONSPIRACY CLAIM MUST BE DISMISSED.**

"To prove a 42 U.S.C. § 1983 conspiracy claim, a plaintiff must show: (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least

one of the alleged coconspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff." White v. McKinley, 519 F.3d 806, 814 (8th Cir. 2008). The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim. Id.

Here, for the reasons set forth in this brief, there has not been an underlying constitutional violation, and the Municipal Defendants are entitled to summary judgment on the Naders' conspiracy claim.

**IV.**

**THERE IS NO UNCONSTITUTIONAL POLICY, PRACTICE OR CUSTOM OF THE CITY OF PAPILLION THAT SERVED AS THE "MOVING FORCE" BEHIND ANY CONSTITUTIONAL VIOLATIONS.**

A.    Plaintiffs Have Failed To Establish a Prima Facie Case Against Chief Scott Lyons. The Claims Against Chief Scott Lyons in His Individual Capacity Must Be Dismissed.

To avoid duplication, the Municipal Defendants hereby incorporate the law section of Section "V" of the Sarpy Defendants' Brief.

Fir the reasons set forth in this brief, there is insufficient allegations or evidence to support the Naders' theories of constitutional violations against Svajgl or Iversen (who is not a Papillion employee), and therefore, the Naders' claims against Papillion fail.

Moreover, with respect to the Naders' failure to train claim, the Naders have failed to put forth any unconstitutional Papillion policy or custom. The evidence shows that Papillion does not have any unconstitutional policies, practices, or customs regarding conducting criminal investigations and making an arrest such as Mr. Nader's. Based on his thorough and extensive investigation into Mr. Nader's possession of child

pornography, knowledge, and training, Detective Svajgl made the decision to arrest Mr. Nader and promptly obtained a detention order.  As set forth above, there is not an underlying constitutional violation, and the policies, practices, and customs of Papillion relating to criminal investigations are lawful.

While "Section 1983 liability cannot attach to a supervisor merely because a subordinate violated someone's constitutional rights," Chief Lyons can be held liable only "if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." Otey v. Marshall, 121 F.3d 1150, 1155 (8th Cir. 1997) (quoting Tilson v. Forrest City Police Dep't, 28 F.3d 802, 806 (8th Cir. 1994)).  Lyons commenced his duties as Chief of Police on March 2, 2015, after Detective Svajgl had completed the vast majority of his investigation.  (Lyons Affidavit ¶ 4). Chief Lyons was not directly involved in the investigation of Mr. Nader leading up to his arrest on March 17, 2015.  (Lyons Affidavit ¶ 9).  The Search Warrant was executed on March 17, 2015. (Complaint ¶ 26).  Chief Lyons was not at the scene on March 17, 2015 when the search warrant was being executed and Mr. Nader was arrested (Lyons Affidavit ¶ 10), nor are there any allegations that he ordered Detective Svajgl to arrest Mr. Nader.

Based on the foregoing, Count IV of the Naders' complaint must be dismissed.

## V.

## MS. NADER LACKS STANDING TO ASSERT HER CLAIMS OR THEY ARE OTHERWISE BARRED.

To avoid duplication, the Municipal Defendants hereby incorporate the law section of Section "VI" of the Sarpy Defendants' Brief.

Additionally, Ms. Nader seeks to raise a federal claim under 42 U.S.C. § 1983 for damage to her reputation and career prospects resulting from her husband's arrest. Despite the civil rights of Ms. Nader never being violated directly, she attempts to raise claims arising out of the alleged violations against her husband. While such derivative claims are recognized in certain circumstances (i.e. wrongful death), several federal courts have held that loss of consortium claims are grounded in *state* law and no such right is recognized under federal law. Fritts v. Niehouse, 604 F. Supp. 823, 825 (W.D. Mo. 1984), aff'd, 774 F.2d 1170 (8th Cir. 1985); but see Pahle v. Colebrookdale Twp., 227 F. Supp. 2d 361, 380, 382 (E.D. Pa. 2002) (standing for a § 1983 claim exists for a spouse based on Due Process rights). In Fritts, the court held a wife's "consortium claim is not directly cognizable under the federal question jurisdictional statute nor under the civil rights jurisdictional statute because [she] has not alleged any deprivation of a federal right." Fritts, 604 F. Supp. at 825.

In Walters v. Oak Lawn, the court noted "the right to consortium is not within the spectrum of interests guaranteed by the Constitution or federal law." 548 F. Supp. 417, 419 (N.D. Ill. 1982). Several of the Circuit courts follow the same approach. See e.g. Niehus v. Liberio, 973 F.2d 526, 532-34 (7th Cir.1992) (holding a spouse cannot recover damages under the Constitution for loss of consortium); Berry v. City of Muskogee, 900 F.2d 1489, 1506-07 (10th Cir.1990) (§ 1983 creates a federal remedy only for the party injured); Stallworth v. City of Cleveland, 893 F.2d 830, 838 (6th Cir.1990) (only the party whose civil rights were deprived may raise a § 1983 claim).

Since the alleged derivative liability to Ms. Nader from her husband's arrest does not rest on circumstances of her own causing "the deprivation of a right, privilege or

immunity secured by the Constitution or federal law," there is no actionable Section 1983 claim. See Parratt v. Taylor, 451 U.S. 527, 536, 101 S. Ct. 1908, 1913 (1981).

In further support that Ms. Nader's 42 U.S.C. § 1983 claims should be dismissed is the fact that the only "damages" she claims arising from the arrest of her husband is damage to reputation and career advancement. In Paul v. Davis the Supreme Court refused to recognize "reputation alone, apart from some more tangible interests such as employment, [as] either "liberty" or "property" by itself sufficient to invoke the procedural protection of the Due Process Clause." 424 U.S. 693, 701 96 S. Ct. 1155 (1976). "The Supreme Court made clear that injury to reputation alone is not sufficient to state a § 1983 claim." Jones v. McNeese, 746 F.3d 887, 898 (8th Cir. 2014).

## CONCLUSION

There are no genuine issues of material facts. Detective Svajgl had probably cause to arrest Mr. Nader. Applying the law to each of the Naders' claims, summary judgment is appropriate and this case must be dismissed.

THE CITY OF PAPILLION, BRYAN SVAJGL, BENJAMIN IVERSEN AND SCOTT A. LYONS, Defendants

By: /s/ Ryan M. Kunhart
 Ryan M. Kunhart, #24692
 Jeffrey J. Blumel, #19011
 Dvorak Law Group, LLC
 13625 California Street, Suite 110
 Omaha, Nebraska 68154
 rkunhart@ddlawgroup.com
 jblumel@ddlawgroup.com
 Telephone: 402-934-4770
 Attorneys for Defendants the City of Papillion,   Bryan Svajgl, Benjamin Iversen and Scott Lyons

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 5th, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Christopher J. Tjaden:      ctjaden@grosswelch.com
Zachary W. Lutz-Priefert:  zlutzpriefert@grosswelch.com
Vincent Valentino:         vince@nrmainc.info


                              *s/ Ryan M. Kunhart*
                              Ryan M. Kunhart