IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| WADITH STOCKINGER NADER and STACEY NICHOLE NADER, | ) ) ) |
| Plaintiffs | ) ) |
| vs. | ) ) ) |
| THE CITY OF PAPILLION; SARPY COUNTY; BRYAN SVAJGL; BENJAMIN IVERSEN; SCOTT A. LYONS; L. KENNETH POLIKOV; and JENNIFER MIRALLES, | ) ) ) ) ) ) ) |
| Defendants. | ) |

Case No. 8:17-CV-00083

**BRIEF IN OPPOSITION TO DEFENDANTS' SVAJGL'S, IVERSEN'S, LYONS'S, AND CITY OF PAPILLION'S MOTION FOR SUMMARY JUDGMENT**

## **INTRODUCTION**

This is a case in regard to the violation of the civil rights of Wadith Nader ("Mr. Nader"), as well as to the damage to his wife, Stacey Nader ("Ms. Nader") (collectively Mr. and Ms. Nader referred to as the "the Naders"). In this case there are a total of seven Defendants, each of whom had direct involvement in the violation of Mr. Nader's rights, and the resulting damages the Naders suffered. The individuals who were the direct result of Mr. Nader's civil rights, are employees of two distinct political subdivisions in the State of Nebraska. Bryan Svajgl ("Svajgl") is a detective with the Papillion Police Department, Scott A. Lyons ("Lyons") is the Police Chief for Papillion's Police Department, and Benjamin Iversen ("Iversen") is a Detective with the Police Department of La Vista, Nebraska, and on the day of the violation of Mr. Nader's civil rights, was working as an agent for the Papillion Police Department. In addition to Svajgl, Lyons, and Iversen, the

City of Papillion is also a named defendant in this case (collectively, "Svajgl, Iversen, Lyons and the Papillion Police Department are referred to as the "Papillion Defendants").

In addition to the Papillion Defendants, there are three Defendants from Sarpy County, Nebraska. Jennifer Hessig (f/k/a Miralles) ("Hessig"), who was a Deputy County Attorney employed by the Sarpy County Attorney's Office on the date of violation of Mr. Nader's civil rights; Kenneth Polikov ("Polikov") who is the County Attorney in Sarpy County, Nebraska, and the County of Sarpy ("Sarpy County") who is Polikov's employer (collectively Hessig, Polikov, and Sarpy County are referred to as the "Sarpy County Defendants."

On or about October 5, 2017, the Papillion Defendants filed a Motion for Summary Judgment as to all claims filed by the Naders. Additionally, there is pending before this Court a Motion for Summary Judgment filed by the Sarpy County Defendants. This Brief is submitted by the Naders in opposition to the Papillion Defendants' Motion for Summary Judgment. This Brief responds to all issues contained within the Papillion Defendants' Motion for Summary Judgment; however, pursuant to this Court's Order of May 26, 2017, the primary purpose of summary judgment is exclusively to resolve issues of immunity, and while this Brief shall respond to issues not regarding immunity, the Naders believe that any issues not related to immunity should be discarded.

## FACTS

In December, 2014, the National Center for Missing and Exploited Children ("NCMEC") sent a tip to the Nebraska State Patrol of a possible possession of child pornography case, and the Nebraska State Patrol passed the tip onto the Papillion Police Department. (Svajgl Aff ¶3; Svajgl Depo 43:6-10) Svajgl was named the lead Detective

2

on the case, and as a result began to conduct an investigation into the tip. During the course of his investigation Svajgl obtained a search warrant for the home of the Naders. (Svajgl Depo 35:1-3; Svajgl Aff ¶23) In order to execute the search warrant, Svajgl assembled a team of detectives from Papillion and La Vista to perform the search of the Nader home. (Svajgl Depo 45:7-14) As a part of the team assembled, Svajgl specifically sought out and obtained the use of Iversen. (Svajgl Depo 46:17-21) Svajgl sought and used Iversen under an intra-local agreement between local police departments. (Iversen Depo 54:23-55) Iversen was utilized because of his skillset with regard to analyzing and previewing computers. (Iversen Depo 61:5-8; Svajgl Depo 46:11-21; 47:17-19)

      The search of the Nader home was the first time Svajgl had conducted a search of the home as the lead detective. When the investigatory team reached the Nader home, Iversen set out to begin previewing of the computers and other hardware owned by Mr. Nader. (Svajgl Depo 50:7-11) During the several hour long search of the Nader home, no images containing any child pornography were found on any device owned by the Naders. (Iversen Depo 80:20-22; Svajgl Depo 62:12-17; 63:5-11; 73:11-15)

      There was one image identified as possible known child pornography based upon the search tools used by Iversen, no confirmation of this image was possible to be seen. (Iversen Depo 48:20-23; 111:30-112:3) This image was located using OS-Triage, which is a tool Iversen was using for the first time during the course of an investigation. (Iversen Depo 66:14-21). Furthermore, while running the software Iversen was concerned that the software was running slow and freezing up. (Iversen Depo. 95:20-96:7) Svajgl had no working knowledge of OS-Triage. OS-Triage flagged the image based upon its hash value, however, both Svajgl and Iversen acknowledged that the hash value itself is not in

and of itself sufficient to render probable cause. (Iversen Depo 64:21-65:5; 76:23-77:8; 114:8-12; Svajgl Depo 70:23-71:8) In order to determine if a hash value of an image is actually child pornography, it is necessary to review the image itself which Iversen did not do at the Nader home. (Iversen Depo 43:20-23; 110:1) Iversen was the only individual involved in the previewing of technology at the Nader home, no other person, including Svajgl, made any review of images while at the Nader home. (Iversen Depo 82:14-21; Svajgl Depo 72:3-9) During the search of the Nader home, none of the images from the NCMEC tip were located in the Nader home. (Svajgl Depo 73:7-15)

During the course of interviewing Nader, Svajgl learned that Nader's email account, which allegedly had child pornography uploaded from it, had previously been hacked. (Nader Aff ¶ 4) At the time Nader was arrested, the security system on his router, which would have allowed others to access his IP address, was minimal. (Nader Aff ¶ 8) No actions were taken by any police officer to determine who had access to the Nader IP address.

## ARGUMENT I

**ANY INFORMATION DISCOVERED AFTER THE ARREST OF MR. NADER, AND THE VALIDITY OF THE SEARCH OF THE NADER HOME, ARE IRRELEVANT TO THE ISSUES BEFORE THIS COURT**

With regard to the Motion before this Court, the Papillion Defendants are trying to escape liability on the basis of qualified immunity. With regard to issues of qualified immunity and warrantless arrests the law is well-settled that a determination of relief from liability as a result of qualified immunity is based upon the belief of a party "in light of all facts known at the time…." *Reece v Groose*, 60 F.3d 487, 490 (8 Cir. 1995) *See also Anderson v Creighton*, 483 U.S. 636 (1987)

Because the information is based solely on what was available and known to the detectives at the time of the arrest, any information which was discovered subsequent to the arrest of Mr. Nader, cannot be weighed in favor of the Papillion Defendants with regard to having knowledge of any alleged crime allegedly committed by Nader.

Likewise, all information offered by the Papillion Defendants with regard to the validity of the search of the Nader home, or the information which the detectives believed to be known to them prior to the search of the Nader home, is largely irrelevant and a red herring attempting to immunize bad conduct, by pointing to prior good conduct.

## ARGUMENT II

### THE PAPILLION DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

**A.    Standard of Review for Qualified Immunity**

The United States Supreme Court has previously set forth a two-factor test to determine whether qualified immunity is available to a state actor. *Scott v Harris*, 550 U.S. 372 (2007); *Pearson v Callahan*, 555 U.S. 223 (2009)  The two prongs which can be considered in either order are:  (1)  Do the facts show that an Officer's conduct violated a constitutional right of an individual, and (2)  Was the constitutional right "clearly established… in light of the specific context of the case." *Scott v Harris*, 550 U.S. at 376

With regard to the issue of qualified immunity being raised on a motion for summary judgment "a dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Material facts are facts that might affect the outcome of the suit under the governing law." *Hayter v City of Mt. Vernon*, 154 F.3d 269, 275 (5th Cir. 1998)

### B. The Law Regarding Qualified Immunity

Qualified immunity is designed to shield government officials when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Baldwin v Chandler*, 60 F.3d 487, 491 (8th Cir. 1995) Ultimately, qualified immunity will turn on the "objective legal reasonableness of the action. *Anderson v. Creighton*, 483 U.S. at 639 The Supreme Court in *Anderson*, went on to state that the contours of a right with regard to qualified immunity have to be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640 "Objective reasonableness depends on the totality of the circumstances." *Clayborn v. Struebing*, 734 F.3d 807, 809 (8th Cir. 2013) (Internal citations omitted.) Government officials consequently are generally not entitled to qualified immunity for actions which violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Rogers v. City of Little Rock Arkansas*, 152 F.3d 790, 798 (8th Cir. 1998)

### C. The Fourth Amendment Right to be Free from Arrest without Probable Cause is a Clearly Established Right, and Probable Cause is Clearly Defined

The Eighth Circuit Court of Appeals has made clear, that the right to be free from arrest without probable cause is guaranteed and clearly established by the Fourth Amendment, as the Eighth Circuit noted previously "the Fourth Amendment right of citizens not to be arrested without probable cause is indeed clearly established." *Williams v City of Alexander, Ark*, 772 F.3d 1307, 1313 (8th Cir. 2014) (quoting *Kuehl v Burtis*, 173 F.3d 646 (8th Cir. 1999)

Moreover, the definition of probable cause is likewise well-defined in the Eighth Circuit. "Probable cause exists when the totality of the circumstances at the time of the

6

arrest [is] sufficient to lead a reasonable person to believe that the Defendant has committed or is committing an offence." *Joseph v Allen*, 712 F.3d 1222, 1226 (8th Cir. 2013) (Internal citations omitted.) Further, it is well-established that "a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments." *Id.* at 1226

While the definition of probable cause is in of itself clearly defined, it is likewise clearly defined when an action does or does not constitute probable cause. A tip alone is insufficient to establish probable cause for a warrantless arrest. "A reliable tip can form the basis for probable cause if it is sufficiently detailed and independently verified by a law enforcement officer using evidence **other than the tip itself, the tip is insufficient to validate an arrest where there is no evidence which supports the tipster's allegations that the suspect was committing the crime of which he is accused.**" *Swartz v State*, 857 So.2d 950 (Fla. 2003) (Emphasis added.) While a tip itself may be sufficient to give reason to conduct a search, developments during the course of a search can effectively negate the tip and erode any basis for probable cause that the tip might have established. *Roane v. City of Philadelphia*, 1999 WL 257759 (E.D. Penn. 1999)

In *Roane* an informant had informed officers that a vehicle had been re-VINed, meaning the VIN number of the vehicle had been changed. *Id*. This was sufficient for the officers to perform a search of the vehicle, and upon performing a search of the vehicle the officers determined that the car had not been altered. *Id.* The officers, nonetheless, arrested the *Roane* Plaintiff, and subsequently the Plaintiff brought its civil lawsuit. *Id.* The Court concluded that while there may have been reason to search the vehicle, and determine whether a crime had been committed, at the point in time where the car was

determined not to have been re-VINed, and where there is no other evidence of a crime, that the informant's tip was eroded as was any basis for probable cause. *Id.*

In order for a tip to ripen into the existence for probable cause, an arresting officer must corroborate by their own observations and investigation the tip as the tip alone is not sufficient to support an arrest. *McGee v State*, 23 S.W.3d 156 (Ct. App. Tx. 2000) *See also People v Mosley*, 400 Mich. 181, 254 N.W.2d 29 (1997); *State v. One 1975 Lincoln Mark IV*, 1981 WL 390975 (R.I. 1981); *Goettl v State*, 842 P.2d 549 (Wyo. 1992)

Even statements from other officers may not give officer probable cause sufficient to grant him qualified immunity where an officer never confirms the existence of probable cause for an arrest. *Rogers v Powell*, 120 F.3d 446 (3d Cir. 1997)

### D. Based Upon the Totality of the Circumstances, There Was No Evidence of Any Crime Being Committed

Ultimately, this case comes down to the fact that when the search of the Nader home was actually conducted, no evidence of any crime was found. While the police want to paint a picture that at the same time they had sufficient information to obtain a search warrant for the Nader home, they also had sufficient information to obtain an arrest warrant for Mr. Nader, this is simply not true. At the time of the search of the Nader home they had no evidence that any computer used by Mr. Nader was used to possess any child pornography. After the search of the Nader home was completed the Papillion Defendants still had no evidence that any device owned by Mr. Nader was used to possess child pornography. At the time of the search of the Nader home the Papillion Defendants had no evidence that it was Mr. Nader who had allegedly uploaded any pornographic images to Microsoft Sky Drive. By the time the Papillion Defendants arrested Mr. Nader there was still no evidence that Mr. Nader had uploaded any allegedly

8

pornographic images to Microsoft Sky Drive, and the sole basis for the arrest of Mr. Nader is the possibility, provided solely by the tip, that Mr. Nader uploaded some image to Microsoft Sky Drive. There was no confirmation as to the date when this occurred, there was no confirmation as time when this occurred, there was no confirmation as to where this occurred, there was no evidence of who allegedly took an illegal action, there was simply no confirmation or proof of any kind of an action taken by Mr. Nader which allegedly might have been illegal.

Additionally, there was no evidence that Mr. Nader had ever searched for, or otherwise sought out, child pornography. There was no evidence that Mr. Nader used any encryption software, which is commonly used to hide illegal conduct. To the contrary Iversen himself testified that there was no evidence of encryption software. Iversen testified that there was no evidence that Mr. Nader went to the Dark Web, another place known for use of illegal conduct. Further, at the time of the search there was no proof that Mr. Nader ever had any knowledge that he was in possession of child pornography and absolutely nothing, no question asked by Svajgl, no search done on the computer, and no other thing found in the Nader home established or even gave the most remote notion that Mr. Nader had an intent to possess child pornography. Under Nebraska law intent is an element of the crime of possession of child pornography. In order to have probable cause to make an arrest the police unequivocally must have proof that the crime was committed and under Nebraska law there was no such proof of any crime of any kind being committed by Mr. Nader at the time he was arrested. Moreover, Svajgl knew that Nader's email had been hacked, as Nader had specifically informed Svajgl of that fact at during the interview.

Ultimately, what happened in this case was that the Papillion Defendants, and specifically Svajgl, had a tip from a source that a crime had been committed, the Papillion Defendants followed-up on the tip, the Papillion Defendants discovered that the tip itself was, in fact, unfounded, and nonetheless the Papillion Defendants decided to make an arrest. This is not the action of a reasonable person. To the extent that there might have been a modicum of probable cause at the time in which the search warrant itself was obtained, that probable cause was eroded by the lack of evidence of any crime being found at the scene of the Nader home. A reasonable police officer knows that a tip alone is not sufficient to warrant probable cause to make an arrest. A reasonable police officer further knows that when a tip turns out to be false, there is no probable cause for an arrest. In this case, a reasonable police officer would know that where there is no evidence of intent and no evidence of possession there could be no probable cause to permit a warrantless arrest. Further, the search warrant obtained by Svajgl specifically allowed Svajgl to remove any devices he needed to from the Nader home to conduct further analysis on them, that further analysis should have been taken prior to any arrest being made because the information revealed by the initial analysis was that there was absolutely no reason to have probable cause.

Likewise, there should have been no concern in Svajgl's mind as to whether the Nader's were flight risks as the Nader's own their home, were US citizens, Mr. Nader had served in the Airforce, and Ms. Nader was currently serving in the Airforce, and their minor children were enrolled in school in Nebraska. As a result, there were no heightened concerns regarding Mr. Nader.

Svajgl clearly had his own doubts at the time of the arrest because he made a call to the County Attorney to confirm whether or not an arrest should have been made. This action, in and of itself, establishes that no probable, or arguable probable cause existed. No reasonable officer who believed that they had even arguable probable cause would call the County Attorney. If Svajgl truly believed he had probable cause, and had no reason to doubt the existence of probable cause then he never would have called the County Attorney to make a determination as to whether probable cause existed and, as the *Rogers v Powell* case demonstrates the decision as to whether probable cause exists has to stem from the arresting officer's own knowledge and decision making, and the arresting officer cannot rely use as a shield the sheer fact that another party told him that there was probable cause. In this case, where there was no evidence of intent, there was no evidence of a possession, there simply could be no rational basis to make an arrest, Svajgl knew that and nonetheless an arrest was made.

Everything Svajgl knew at the time of the arrest was that there was no evidence of any confirmed crime having been committed by Mr. Nader. Iversen conducted a thorough review of the electronic devices found in the Nader home, and found no evidence of any crime whatsoever. Because no evidence of any crime was found, there could no basis to arrest Mr. Nader. Nonetheless, Mr. Nader was arrested in spite of the fact that there was absolutely no probable cause, or even arguable probable cause. No reasonable officer would have made the arrest of Mr. Nader, and yet Mr. Nader was arrested. Because Mr. Nader was arrested in the complete absence of any form of probable cause, the Papillion Defendants' Motion for Summary Judgment on the basis of qualified immunity must be denied.

## ARGUMENT III

## THE UNDERLYING CLAIMS ARE SUFFICIENTLY ESTABLISHED TO AVOID SUMMARY JUDGMENT ON THE ISSUE OF CONSPIRACY

A claim for conspiracy to violate civil rights is not able to exist as a standalone action. *Slusarchuk v Hoff*, 346 F.3d 117 (8th Cir. 2003) With that rule in mind, however where a party has an actionable claim for a violation of civil rights, it necessarily follows that there is a potential for a claim for conspiracy.

As discussed in greater detail above, the Papillion Defendants' conduct is not immunized by qualified immunity, and as a result the Papillion Defendants cannot use qualified immunity as a reason to dismiss the Naders' claims for violation of civil rights. Because Mr. Nader's claims for violation of his constitutional rights are still viable claims, this Court should not grant summary judgment as to the cause of action concerning conspiracy. Further, because this issue is outside of the contemplated scope of this Court's May 26, 2017, Order regarding motions for summary judgment the Papillion Defendants' Motion for Summary Judgment with regard to issue of conspiracy should be denied.

## ARGUMENT IV

## THERE IS A CLEAR UNDERLYING FAILURE TO TRAIN OR SUPERVISE WHICH DIRECTLY RESULTED IN A VIOLATION OF MR. NADER'S RIGHTS

As a general rule, municipalities may be found liable under 11 U.S.C. § 1983 where they have instituted lawful policies but have either failed to adequately train or supervise their employees and where such inadequate training or supervision leads to a violation of an individual's constitutional rights. *Brossart v Janke*, 859 F.3d 616 (8th Cir. 2017) Similarly, an unofficial custom of a municipality may also give rise to the municipality's

liability. *Malone v Hinman*, 847 F.3d 949 (8th Cir. 2017) In this case, the shortcomings of the Papillion Police Department to adequately train, or supervise its employees, is clear on the face as a result of the violation of Nader's civil rights. The training, and policies in place with regard to what constitutes probable cause were not sufficiently present on the day of Mr. Nader's arrest. Had such procedures been in place, the officers conducting the arrest of Mr. Nader would have known that no probable cause existed for an arrest because based on the totality of the circumstances there was no evidence that Mr. Nader specifically had committed any crime.

Moreover, to the extent that the City of Papillion, and the Papillion Police Department wish to contend that it really is not an issue of policies or training, then the issue of supervision is directly relevant. Like the *Brossart* Court notes, where there is a failure to supervise, it's hardly relevant whether the policies which are actually in place are or are not constitutional. In this case, there was a lack of supervision from Lyons, and others in the Papillion Police Department, which directly resulted in the damages suffered by Mr. Nader as a result of his unconstitutional arrest.

Additionally, this issue is outside of the contemplated scope of this Motion for Summary Judgment, which is limited strictly to issues of immunity, a fact which the Papillion Defendants are well aware of as they objected to all questions regarding officers and their responses to the Naders' Interrogatories. Every time a question was asked in interrogatories sent by the Naders to the Papillion Defendants, the Answer to Interrogatory was an objection that the interrogatory exceeded the scope of discovery as ordered by the Court in its May 26, 2017, Order. Now the Papillion Defendants wish to use the fact that the Naders have been unable to determine exactly which policies, or

where the breakdown in supervision occurred as a reason to dismiss the claims for lack of adequate training and supervision. This simply cannot be allowed.

As a result of the foregoing, the Papillion Defendants' Motion for Summary Judgment on Count IV of the Naders' Complaint must be dismissed.

## ARGUMENT V

**THE DAMAGES ALLEGED BY MR. NADER, AS WELL AS BY MS. NADER, DIRECTLY STEM FROM THE VIOLATION OF MR. NADER'S CIVIL RIGHTS AND THE NECESSARY LAWS OF CONSORTIUM THAT FOLLOWS THEREIN**

As a general rule spouses are entitled to claim a loss of consortium when the personal rights or services and companionship of their spouse is denied as a result of a violation of civil rights. *Pahle v Colebrookdale Tp*, 227 F.Supp.2d 361 (E.D. Penn. 2002) *See also Folores v Cameron Cnty, Tex.*, 92 F.3d 258 (5th Cir. 1996); *Rhyne v. Henderson Cnty*, 973 F.2d 386 (5th Cir. 1992); *Crumpton v. Gates*, 947 F.2d 1418 (9th Cir. 1991) Likewise, it is well-established under Nebraska law that spouses are entitled loss of consortium, the damages of which represent the compensation for the spouse who has been deprived of their rights to which they otherwise would have been entitled as a result of the marital relationship including, but not limited to, the assistance of the spouse. *Erickson v. U-Haul Intn'l*, 278 Neb., 767 N.W. 2nd 765 (2009)

In this case, Ms. Nader's claims stem from the fact that as a direct result of the violation of her husband's rights she suffered a significant harm. As a direct result of her husband's arrest, Ms. Nader was unable to take a change in assignment which would have marked an improved status in her career which would open the door to further promotions and pay increases. However, because Mr. Nader was in prison, Ms. Nader

was forced to have this position rescinded, ultimately jeopardizing her career, and leading to her own decision to retire early from the Airforce.

Because Ms. Nader has been harmed as a direct result of her husband's unconstitutional arrest and confinement, she's entitled to damages directly related to loss of consortium as guaranteed under state law, and is recognized in a number of circuits. It is undeniable that there is, at a minimum, a genuine dispute as to factual validity surrounding Mr. Nader's arrest and as a result of that dispute, the Papillion Defendants are not entitled to summary judgment as to the issue of Mr. Nader's damages.

## CONCLUSION

For the reasons set forth above, including the fact that the Papillion Defendants are not entitled to qualified immunity, that the Papillion Defendants conspired amongst themselves and with the Sarpy County Defendants to violate Mr. Nader's civil rights, that the Papillion Police Department, and its agents failed to adequately train and supervise its employees and the direct damages to both Mr. and Ms. Nader as a direct result of the Papillion Defendants' actions, this Court should deny the Papillion Defendants' Motion for Summary Judgment.

Dated this 26th day of October, 2017.

        WADITH STOCKINGER NADER AND
        STACEY NICHOLE NADER, Plaintiffs

By: _____
       Christopher J. Tjaden, #18413
       Zachary Lutz-Priefert, #25902
       GROSS & WELCH, P.C., L.L.O.
       1500 Omaha Tower
       2120 South 72nd Street
       Omaha, NE 68124
       (402) 392-1500
       *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Vincent Valentino, Ryan M. Kunhart.

*/s/ Christopher J. Tjaden*

_____
Christopher J. Tjaden

12913-1/6CR8075